**COMMONWEALTH of Pennsylvania,**
**Appellant,**

v.

**Johnette O. YOUNG, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 30, 2005.

Filed March 6, 2006.

James P. Barker, Asst. Dist. Atty., Harrisburg, for Com., appellant.

Jessica L. Bush, Public Defender, Harrisburg, for appellee.

BEFORE: JOYCE, ORIE MELVIN and TAMILIA, JJ.

1. The court corrected the March 18, 2005, illegal sentence *sua sponte,* on August 3, 2005; the two, 36–month concurrent terms of IP were amended to two, 36–month concurrent terms of probation. This attempt at modification must fail as the court lacked jurisdiction to amend.

2. 18 Pa.C.S.A. § 4120.

OPINION BY TAMILIA, J.:

¶ 1 The Commonwealth appeals from the March 18, 2005, aggregate judgment of sentence of 36 months of intermediate punishment (IP) [1] and the Order of restitution imposed upon appellee, Johnette O. Young, after she pled guilty to one count each of identity theft,[2] a felony three carrying an offense gravity score (OGS) of five, and theft by deception.[3] Both charges related to appellee's fraudulent use of her cousin's identity. Based on the discussion *infra,* we vacate the judgment of sentence and remand for proceedings consistent with this Opinion.

■ ¶ 2 The Commonwealth argues that the sentence imposed, which was below the mitigated range of six months, was too lenient, given the crimes' offense gravity scores, the appellee's prior record score of four, and her less than successful rehabilitation.[4] "[T]he sentence imposed by the trial court was excessively lenient and therefore contrary to the fundamental norms underlying the sentencing process." Appellant's brief at 11.

¶ 3 The Commonwealth also argues the court imposed an illegal sentence when it sentenced appellee to a period of IP without a restrictive portion, as is required by the County IP program. 42 Pa.C.S.A. § 9804, **County intermediate punishment programs (a) Description.—**

A county intermediate punishment program *must* include restrictive intermediate punishments *and* restorative sanctions (when used in combination with

3. *Id.* § 3922(a)(1).

4. For the crime of identity theft, a felony of the third degree with an offense gravity score of five, the appellant, with a prior record score of four, faced a standard sentence of nine to 16 months' incarceration.

restrictive intermediate punishments). 42 Pa.C.S.A. § 9804(a). Restrictive intermediate punishments include programs that house the offender full or part-time, significantly restrict the movement of the offender and monitor compliance with the program, or a combination of housing and significant restrictions or movement. 42 Pa.C.S.A. 9804(a)(1).

Appellant's brief at 20–21 (emphasis in original).

¶ 4 "While sentencing courts do possess broad discretion, that discretion is not unfettered and remains subject to appellate review." *Commonwealth v. Whitman*, 880 A.2d 1250, 1252 (Pa.Super.2005). "[W]hen imposing a sentence, the sentencing court must take into account 'that the sentence is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.' 42 Pa.C.S. § 9721(b)." *Id.* at 1253. "The court shall also consider any guidelines." *Id.*

¶ 5 As the trial court explained in its Opinion, citing *Commonwealth v. Walls*, 846 A.2d 152, 157–158 (Pa.Super.2004), *appeal granted*, 583 Pa. 662, 875 A.2d 1075 (2005),

[t]he sentencing guidelines, implemented to create greater consistency and rationality in sentencing, provide a norm for comparison. The provision of a "norm" requires an assumption of the type of conduct that typically satisfies the elements of the crime and correlates the norm to that conduct. The provision of a "norm" also strongly implies that deviation from the norm should be correlated with facts about the crime that also deviate from the norm for the offense, or facts relating to the offender's character or criminal history that deviates from

the norm and must be regarded as not within the guidelines['] contemplation.

Trial Court Opinion, Turgeon, J., 8/3/05 at 3.

¶ 6 A detailed explanation of the facts surrounding the crimes committed by appellee was set forth by the trial court.

On July 3, 2001, [appellee], a fugitive from New Jersey [on drug trafficking charges], delivered her daughter in Harrisburg Hospital. Defendant told hospital personnel she was [victim] and [the victim] was also identified as the child's mother on the birth certificate. In addition, the hospital billed expenses of $4,124.50 to [the victim]. [The victim] is [appellee's] cousin and [appellee] had been raised by [the victim's] parents.

Around the same time period, [appellee] applied for a job under her cousin's name and was later arrested. On November 29, 2001, she pled guilty to identity theft and was sentenced, pursuant to a negotiated plea, to county intermediate punishment. She was not sentenced at this time with any offenses related to the July 3, 2001 hospital incident since her deceptions had not yet been discovered. Due to the outstanding New Jersey warrant, she was extradited there and served a prison term for a drug offense. She was released from New Jersey confinement on June 30, 2004, and returned to Dauphin County. While incarcerated, [appellee's] daughter was placed in foster care and her older son with [the victim's] older sister.

[The victim] claimed that she became aware of the hospital incident in March of 2004, when she was contacted by Dauphin County Children & Youth regarding the custody of "her daughter." [The victim] told the authorities she had no children and suspected the [appellee] was falsely using her name. [Appellee] was thereafter arrested and charged

with identity theft and theft of services, both third degree felonies. On March 18, 2005, [appellee] pled guilty before [the court] to both charges.

Trial Court Opinion at 1–2.

¶ 7 In determining whether the sentence imposed was unreasonably lenient, this Court must consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the opportunity of the court to observe the defendant and consider any pre-sentence investigation report; (3) the findings upon which the sentence was based; and (4) the sentencing guidelines. *Commonwealth v. Sims,* 728 A.2d 357, 359 (Pa.Super.1999), *appeal denied,* 560 Pa. 703, 743 A.2d 918 (1999).

¶ 8 Identity theft is one of the fastest growing, non-violent crimes in America, and thousands of people and services are defrauded each year, causing millions of lost dollars and greatly increased insurance costs. As reported in the Friday, January 14, 2005, issue of USA TODAY, a victim of identity theft loses an average $92,893, and must spend 600 hours restoring his or her identity. While it appears the victim herein has not been damaged to this extent, it makes the appellee's crimes no less egregious.

¶ 9 The appellee is a first cousin of the victim, Sheila Jones, and the two women were raised together by the victim's parents, thereby explaining appellee's intimate knowledge of the victim's personal information and her ability to successfully defraud the health care provider and any other unsuspecting target. Only a few short months after using her cousin's identity to obtain medical services in July 2001, appellee was arrested and pled guilty,[5] on November 29, 2001, to using this same

cousin's identity to falsely secure a job, her admission of guilt clearly nothing more than "lip service" to achieve leniency by the court. Appellee was not prosecuted for the theft of services at Harrisburg Hospital at this time because she had not yet been "caught," and she apparently had failed to reveal all misuses of the identifying information of the victim, as required by the terms of the negotiated plea agreement. Appellee's repeated disregard for the family who raised her speaks volumes, and her deceptive way of life may have been interrupted only due to the three-year term of incarceration and time in a halfway house in New Jersey, imposed as a result of an outstanding warrant for drug trafficking.

¶ 10 At the sentencing hearing, the victim testified there was at least one other, unprosecuted instance of appellee's use of her identity (a utility bill), and she was unsure what others may exist. N.T., 3/18/05, at 23–24. The victim also expressed outrage at her cousin's repeated lack of respect for their familial relationship, and appellee's lack of effort to remedy the financial and legal morass caused by the identity theft. The sentencing court, which was not privy to a pre-sentence investigation report due to appellee's waiver of same, also heard favorable testimony from a CYS caseworker, Sherry Blackburn, regarding appellee's efforts to regain custody of her daughter. Jason Dilissio, of Keystone Family Services, also praised appellee's efforts to regain custody of her child. Finally, Shannon Danley, with Dauphin County Pretrial Services, testified regarding appellee's cooperation following arraignment. We find that such testimony, based on appellee's behavior during the six months following her release from custody, was an insufficient ba-

---

5. Appellee was prosecuted and sentenced at 3345 Criminal Docket 2001 with regard to her use of the victim's identity to secure employment.

sis upon which to conclude her criminal lifestyle had been permanently changed for the better.

¶ 11 While we appreciate the witnesses' testimony regarding appellee's admirable efforts to reunite with her daughter, we agree with the Commonwealth, given the nature and circumstances of the crimes, and the history and characteristics of the appellee, that the court abused its discretion by accepting this testimony without allowing the Commonwealth the opportunity to challenge, and by imposing a sentence outside the sentencing guidelines, less than the suggested mitigated range. The facts do not support such extreme leniency. *See Sims, supra.*

 ¶ 12 That being said, we must also vacate the original March 18, 2005 judgment of sentence because it was illegal *ab initio,* and the court lacked jurisdiction to amend the sentence when it did so on August 3, 2005. The original county sentence for an aggregate term of 36 months IP was illegal at its inception, as it did not include a term of restrictive intermediate punishment as required by 42 Pa.C.S.A. § 9804(a).[6] The attempt by the sentencing court to amend/correct the sentence, more than four months later, was void as the court lacked jurisdiction. *See* 42 Pa.C.S.A. 5505, Modification of orders. The court's reliance on *Commonwealth v. Santone,* 757 A.2d 963, 966 (Pa.Super.2000), *appeal denied,* 564 Pa. 730, 766 A.2d 1247 (2001) is misplaced as it is factually distinguishable

from the case before us. The sentencing court relies on *Santone* for the purported premise that a court "can *sua sponte* [ ] correct an illegal sentence originally imposed, even after the defendant has begun serving the original sentence." Record, No. 4–5, Order n. 1. While that may be true under specific circumstances, that is not the situation here, nor is it the issue with which we are faced.

¶ 13 Any attempt by a party to correct an illegal sentence must be accomplished by the timely filing of a post-sentence motion (within 10 days), direct appeal (within 30 days of the denial of post-sentence motions or the imposition of sentence) or Post Conviction Relief Act petition (within one year of the date judgment of sentence is final). The sentencing court loses its ability to amend or correct a sentence once thirty days have past since imposition, *see* 42 Pa.C.S.A. 5505, **Modification of orders,** *supra,* or a direct appeal has been filed and jurisdiction has been vested in the Superior Court. The sentencing court's ability to amend the March 18, 2005, sentence was lost after it denied the Commonwealth's post-sentence motions on March 24, 2005, and a timely notice of appeal was filed on April 25, 2005.[7]

¶ 14 Having found the sentencing court abused its discretion by sentencing appellee below the suggested mitigated guidelines range, and also having found the sentence imposed was illegal, as was the court's subsequent attempt at modification,

---

6. The applicable portion of the statute states:
 (a) **Description.**-County intermediate punishment program options shall include the following:
 (1) Restrictive intermediate punishments providing for the strict supervision of the offender including programs that:
 (i) house the offender full or part time;
 (ii) significantly restrict the offender's movement and monitor the offender's compliance with the program; or

(iii) involve a combination of programs that meet the standards set forth under subparagraphs (i) and (ii).
. . .
42 Pa.C.S.A. § 9804(a)(1).

7. While 30 days following the denial of post-sentence motions was April 23, 2005, such day was a Saturday and weekends are excluded from the computation of time. 1 Pa.C.S.A. § 1908, **Computation of time.**

we vacate the March 18, 2005 judgment of sentence of IP and remand for resentencing before an alternative judge to be appointed by the President Judge of the Court of Common Pleas of Dauphin County. In all other respects, the March 18, 2005 sentence is affirmed.

¶ 15 Judgment of sentence vacated in part and affirmed in part. Case remanded for proceedings consistent with this Opinion.

¶ 16 Jurisdiction relinquished.