**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Scott McHALE, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 9, 2007.

Filed May 9, 2007.

Thomas H. Ivory, Philadelphia, for appellant.

Mary Huber, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

BEFORE: STEVENS, McCAFFERY, and KELLY, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, Scott McHale, appeals from the judgment of sentence imposed after this Court vacated one of his multiple convictions and remanded for re-sentencing. Specifically, Appellant asks us to determine whether the trial court made a legal error when it restructured the sentencing scheme to require consecutive rather than concurrent terms of imprisonment, and thereby imposed on remand the same total aggregate term of imprisonment as was originally imposed. Following careful review, we affirm.

¶ 2 The relevant facts and procedural history of the case *sub judice* have been summarized previously by this Court as follows:

On the evening of July 13, 2001, Appellant attended a going-away party with six of his fellow co-workers at the 94th Aerosquadron Bar in Philadelphia. According to testimony of Appellant's co-workers, Appellant consumed a significant amount of alcohol throughout the course of the evening. In addition, testimony was offered as to Appellant's state of apparent intoxication, including his slurred speech and vacillating gait. Upon exiting the bar around 1:00 a.m., Appellant and another man walked to Appellant's 1970 Buick GSX. Despite having neither a valid driver's license

nor insurance coverage, Appellant climbed into his car and drove home, however, not without incident.

Appellant's departure from his parking spot was witnessed by Officer Joseph Kayser, an off-duty police officer working as [a] security guard at a construction site located nearby. At trial, Kayser testified that Appellant revved the engine and then sped through the driveway adjacent to the bar prior to turning onto the road. As the car started down the road, Officer Keyser saw Appellant's car come into contact with a car parked on the side of the road and then collide with two people who had been standing near the car, Tammy Seifert and Daniel Caputo. Despite colliding with a parked automobile and hitting two pedestrians, Appellant continued to drive away from the scene over Officer Keyser's shouts to stop. Appellant became the focus of the investigation of this crime a few days later when, after the press released information pertaining to the car involved in the collision, Officer Richard Lewis, of the Accident Investigation Division, received a tip which resulted in his investigation of Appellant's automobile.

Tammy Seifert and Daniel Caputo had walked to Seifert's Kia Sephia when Appellant's car broadsided the Kia, pushing the parked car eight inches due to the force of the collision. According to the expert testimony of Officer Lewis, Seifert became wedged between the two vehicles as they narrowly passed one another, causing her to spin and land 46 feet from the parked car. Caputo was struck by Appellant's car and momentarily impacted the windshield with his head. The momentum of Appellant's car then propelled Caputo an estimated 79 feet from the point of impact. There was no physical evidence that Appellant attempted to brake prior to impact and

Officer Lewis opined that Appellant was traveling between 35 and 50 miles per hour at the time of impact. The road was marked with a speed limit of 35 miles per hour.

As a result of the accident, Seifert and Caputo suffered significant physical injuries. Seifert suffered fractures to her femur, tibia, fibula, clavicle, shoulder and head. At the time of the trial, Seifert continued to have residual pain from her injuries and could not recall the accident at the time of her testimony. Caputo sustained extensive injuries to his head and underwent numerous related surgeries. Caputo has no memory of the crash and continues to experience memory lapses and difficulty concentrating.

After Officer Lewis received the tip implicating Appellant, Officer Lewis went to Appellant's residence where he discovered a white Buick GXS parked outside Appellant's home. Officer Lewis obtained a search warrant for the vehicle and a subsequent examination of the car revealed a substantial amount of evidence linking the car to the accident including damage to the headlights, windshield and hood of Appellant's car, paint from Seifert's Kia, dye from Seifert's pants, and flesh and hair samples from Caputo. A forged insurance card was also found in the glove compartment of Appellant's car.

Appellant met with Officer Lewis on July 18, 2001. Appellant was given his *Miranda* rights and after a valid waiver of these rights, he proceeded to admit that he was driving the GSX at the time of the accident. He further stated his knowledge that his license had been suspended and then declined to provide any additional information as advised by his counsel.

After [Appellant waived] his right to a jury trial, a bench trial was held on January 6 and 8, 2003. Appellant was acquitted of two counts of aggravated assault by vehicle while intoxicated as well as driving while under the influence of alcohol. Appellant was convicted of two counts of aggravated assault, two counts of causing an accident with no license, insurance fraud, duty to stop in the event of an accident, and altering or forging credentials and documents.

*Commonwealth v. McHale*, 858 A.2d 1209, 1211–12 (Pa.Super.2004) (internal footnotes and citations to the record omitted).

¶ 3 Appellant was sentenced to prison for an aggregate term of 3½ to 7 years, broken down as follows: Count 1, aggravated assault, 3½ to 7 years; for the second Count of aggravated assault, 3½ to 7 years, to run concurrently with Count 1; for each of the following offenses, 1 to 2 years, each to run concurrently with Count 1: Count 3, accident involving death or personal injury while not properly licensed; Count 4, insurance fraud; Count 5, accident involving death or personal injury (requirement to stop); Count 6, altered, forged or counterfeit documents.[1]

¶ 4 On direct appeal, this Court reversed Appellant's judgment of sentence for the two counts of aggravated assault, concluding that the evidence had been insufficient to prove the requisite *mens rea* of malice. *Id.* at 1218. Although the panel affirmed Appellant's other convictions, it nonetheless vacated the judgment of sentence for those convictions and remanded to the trial court for re-sentencing. The panel's opinion expressly recognized that this action was necessary because its disposition of

the case had affected the overall sentencing scheme devised by the trial court. *Id.* On remand, the trial court re-sentenced Appellant to the following terms of imprisonment, to be served *consecutively:* Count 3, accident involving death or personal injury while not properly licensed, 1 to 2 years; Count 4, insurance fraud, 1 to 2 years; Count 5, accident involving death or personal injury (requirement to stop), 1 to 2 years; Count 6, altered, forged or counterfeit documents, ½ to 1 year. The total aggregate term of imprisonment was thus 3½ to 7 years, a term identical in length to the total aggregate term originally imposed.

¶ 5 Appellant filed a timely appeal to this Court, raising the following three questions for our review:

A. Was the re-sentence an increase in sentence on lesser offenses after a reversal of a conviction on lead charges and therefore illegal and in violation of Appellant's rights under the due process clause of the United States Constitution and the Pennsylvania Constitution?

B. Did the trial court enhance the sentence on the surviving lesser charges after reversal of the lead charges and remand for re-sentencing on the lesser charges? Did it do so absent a new and legitimate sentencing concern?

A. Did the court punish Appellant for conduct that the Superior Court found insufficient on direct appeal?

(Appellant's Brief at 4).

### LEGAL PRINCIPLES

#### A. Pennsylvania Law

■ ¶ 6 In essence, Appellant claims that, after this Court reversed his convic-

---

1. The statutory citations of Appellant's offenses are the following: Counts 1 and 10, aggravated assault, 18 Pa.C.S.A. § 2702(a)(1); Count 3, accident involving death or personal injury while not properly licensed, 75 Pa.C.S.A. § 3742.1; Count 4, insurance fraud, 18 Pa.C.S.A. § 4117; Count 5, accident involving death or personal injury (requirement to stop), 75 Pa.C.S.A. § 3742; Count 6, altered, forged or counterfeit documents, 75 Pa.C.S.A. § 7122.

tions for aggravated assault and remanded for re-sentencing on the lesser offenses, the trial court increased his punishment in the absence of legitimate reasons and thus violated the Due Process Clause of the United States and Pennsylvania Constitutions. Appellant's issue thus constitutes a challenge to the legality of his sentence. *See Commonwealth v. Johnson*, 860 A.2d 146, 149 (Pa.Super.2004).[2] Although sentencing is normally vested in the sound discretion of the trial judge, illegal sentences *must* be corrected, and thus challenges to the legality of a sentence may be appealed as of right. *Id.* at 149–50. When we review a challenge to the legality of a sentence, our standard is *de novo* and our scope is plenary. *Commonwealth v. McClintic*, 589 Pa. 465, 471–72, 909 A.2d 1241, 1245 (2006).

■ ¶ 7 In determining the appropriate punishment for any convicted defendant, the trial court must be guided by several principles. "[T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b); *see Commonwealth v. Young*, 895 A.2d 40, 42 (Pa.Super.2006). In addition, the trial court must consider the sentencing guidelines as well as the history and character of the defendant and the particular circumstances of the offense. *Young, supra* at 42, 44; *Commonwealth v. Shugars*, 895 A.2d 1270, 1278 (Pa.Super.2006) (concluding that the sentencing court properly considered the appellant's unprosecuted criminal conduct); *Commonwealth v. Fullin*,

892 A.2d 843, 848–50 (Pa.Super.2006) (concluding that the sentencing court properly considered the extreme circumstances of the case, including the egregiousness of the appellant's behavior and the seriousness of harm to the victim).

■ ¶ 8 Once formulated, the sentencing scheme must be considered as a whole, in its entirety. This principle is most relevant when the scheme has been designed to encompass multiple related offenses of which a defendant has been convicted. Because the individual components of such a sentencing scheme are interrelated, the removal of one component does not automatically or necessarily leave all the others precisely in place. As our Supreme Court has held, "[w]hen a defendant challenges one of several interdependent sentences, he, in effect, challenges the entire sentencing plan." *Commonwealth v. Goldhammer*, 512 Pa. 587, 593, 517 A.2d 1280, 1283 (1986) (quoting *United States v. Busic*, 639 F.2d 940, 948 (3d Cir.1981)).

¶ 9 In applying this principle, the appellate courts of our Commonwealth have repeatedly held that, where a trial court errs with regard to the sentence imposed for one offense in a case involving several convictions, it is proper to vacate the sentences for *all* the convictions and to remand so that the sentencing court has the opportunity to restructure its *entire* sentencing scheme. *See Commonwealth v. Williams*, 871 A.2d 254, 266 (Pa.Super.2005) (citing, *inter alia, Goldhammer, supra*, in remanding for re-sentencing because the trial court's overall sentencing scheme had been disrupted by the appellate court's determination that imposition

**2.** The Commonwealth insistently, but incorrectly, argues that Appellant is challenging the discretionary aspects of his sentence. As this Court has previously stated in *Johnson, supra* at 149, "[a] claim that a court increased the punishment for a crime upon re[-]sentenc-

ing implicates the Due Process Clause of the Fourteenth Amendment as interpreted in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and is regarded as an attack on the legality of the sentence."

of separate sentences under two different provisions of the motor vehicle code was improper in this driving under the influence case); *Commonwealth v. Sutton*, 400 Pa.Super. 291, 583 A.2d 500, 502 (1990) (citing *Goldhammer, supra*, for the proposition that "the proscriptions against double jeopardy do not prevent us from remanding for re[-]sentencing on all bills of information where our vacation of various related counts has upset the trial court's sentencing scheme"); *Commonwealth v. Vanderlin*, 398 Pa.Super. 21, 580 A.2d 820, 831 (1990) (reiterating that, where the appellate court cannot determine whether its vacation of sentence on one count would affect the trial court's sentencing on the remaining counts, the trial court must be given an opportunity on remand to reconsider sentencing).

¶ 10 A particularly instructive example of re-sentencing on remand is found in *Commonwealth v. Bartrug*, 732 A.2d 1287, 1289 (Pa.Super.1999). The appellant in *Bartrug* had been convicted of burglary, theft, and receiving stolen property, and had been sentenced to 7½ to 15 years in prison for theft, with no additional sentence for the burglary or receiving stolen property convictions. The appellant had then filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), claiming that his sentence exceeded the statutory maximum for theft and was therefore illegal. The PCRA court had agreed, had vacated the entire judgment of sentence, and then had re-sentenced the appellant to 7½ to 15 years for *burglary*, with no additional sentence for the theft or receiving stolen property convictions. *Id.* at 1288–89. The appellant appealed based on double jeopardy, but this Court affirmed, concluding that the PCRA court had acted

properly both in vacating the appellant's entire sentencing scheme and then in re-sentencing him to serve the equivalent time in prison, based on an offense that in the original scheme had not itself resulted in a prison term. *Id.* at 1290.

¶ 11 In affirming the PCRA court's judgment of sentence, the panel in *Bartrug* cited our Supreme Court's decision in *Goldhammer, supra.* The appellant in *Goldhammer* had been convicted of 56 violations each of theft by unlawful taking and forgery. He was sentenced to serve a term of imprisonment of 2 to 5 years on one theft conviction and a concurrent term of 5 years' probation on one forgery conviction. Sentencing on the other convictions was suspended. *Goldhammer, supra* at 589–90, 517 A.2d at 1281–82. On appeal to this Court, a total of 34 of the appellant's theft convictions were reversed on statute of limitations grounds, including the only conviction for which the appellant had received a prison term. Subsequently, our Supreme Court not only held that a remand for re-sentencing on those convictions for which sentencing had originally been suspended was proper under Pennsylvania law, but also strongly indicated that it would not be improper for the trial court to reimpose on remand the same original total term of imprisonment, even though the reason for the remand was the reversal of some of the appellant's convictions. *Id.* at 593, 595, 517 A.2d at 1283, 1284. The *Goldhammer* court firmly rejected the appellant's arguments that re-sentencing him on remand to the original 2 to 5 year jail term would constitute an impermissible, increased sentence, concluding that such a sentence would be merely an imposition of the same sentence as originally imposed.[3]

3. We note that initially our Supreme Court had held that re-sentencing under the circumstances presented in *Goldhammer* was barred by double jeopardy considerations. However, the Commonwealth appealed the matter to the United States Supreme Court, which re-

¶ 12 Other cases have made expressly clear that "[p]reserving the integrity of the original sentencing scheme is a legitimate sentencing concern, and sentences may be adjusted so that the aggregate punishment remains the same upon re[-]sentencing." *Johnson, supra,* 860 A.2d at 150; *see also Commonwealth v. Walker,* 390 Pa.Super. 76, 568 A.2d 201, 205 (1989) ("Upon re[-]sentencing, a court has a valid interest in preserving the integrity of a prior sentencing scheme.") For example, in *Commonwealth v. Grispino,* 361 Pa.Super. 107, 521 A.2d 950 (1987), the specific issue was whether on remand the sentencing court could re-sentence an appellant to an increased prison term for one offense in order to keep the aggregate prison term close to the original sentencing scheme. The appellant in *Grispino* had been convicted of robbery, burglary, aggravated assault, recklessly endangering another person ("REAP"), and theft. He was sentenced to 48 to 96 months in prison for the robbery conviction and to lesser terms for each of the other offenses, for an aggregate sentence of 94 to 188 months in prison. *Id.* at 951. Following post-sentence motions, the trial court acknowledged that it had erred in sentencing the appellant separately for aggravated assault, REAP, and theft because these offenses merge with robbery for sentencing purposes. The trial court accordingly vacated the appellant's original sentence and re-sentenced him, imposing an increased prison term of 72 to 144 months for robbery and a lesser sentence for burglary, for an aggregate sentence of 84 to 168 months. The appellant appealed, claiming that the increase in his sentence for rob-

bery violated double jeopardy principles. *Id.* This Court disagreed, noting the trial court's determination that a lengthy period of incarceration was warranted and recognizing that the increased sentence for robbery was imposed in order to maintain a sentence close in length to the original overall sentence. *Id.* at 953.

¶ 13 It is thus clear from our decisional law not only that remand for re-sentencing is appropriate when the trial court's sentencing scheme has been disrupted, but also that on remand the trial court is granted considerable discretion in re-sentencing a defendant. These same principles apply regardless of the underlying reason for the remand and re-sentencing, *e.g.,* because an appellate court has reversed one of the defendant's multiple convictions, *see Goldhammer, supra;* or because one component of the original sentencing scheme was above the statutory maximum, *see Bartrug, supra;* or because the sentencing court failed to recognize that some of the originally imposed sentences merge, *see Johnson, supra; Grispino, supra.*

### B. Federal Law

¶ 14 In matters of re-sentencing, we are bound to consider not only controlling precedent from this Commonwealth, but also several holdings from the United States Supreme Court, which have established certain parameters for re-sentencing. In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the Court held that the imposition of a harsher sen-

---

versed and remanded for consideration of whether Pennsylvania law allowed re-sentencing on the counts for which the sentence had been originally suspended. *See Goldhammer, supra* at 591–92, 517 A.2d at 1282; *Commonwealth v. Goldhammer,* 507 Pa. 236, 489 A.2d

1307 (1985), *rev'd, Pennsylvania v. Goldhammer,* 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985). It appears that on remand in *Goldhammer,* our Supreme Court overruled *Commonwealth v. Pearson,* 450 Pa. 467, 303 A.2d 481 (1973), *sub silentio.*

tence upon re-sentencing, while not constitutionally prohibited, may *not*, under the Due Process Clause, be the result of judicial vindictiveness. *Id.* at 723–25, 89 S.Ct. 2072. To guard against the possibility of vindictiveness, *Pearce* established a presumption, subject to a variety of exceptions, that an increase in sentence upon re-sentencing reflects an improper motive on the part of the sentencing court. The court can overcome the presumption by citing new, objective information not previously available to the court, or other legitimate sentencing concerns. *Texas v. McCullough,* 475 U.S. 134, 142, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986); *see also Johnson, supra* at 150 (construing *Pearce* and *McCullough*); *Commonwealth v. Walker,* 390 Pa.Super. 76, 568 A.2d 201, 203–05 (1989) (construing *McCullough*). Subsequent cases from the Court have clarified that the *Pearce* presumption should not be automatically applied every time a defendant receives an increased sentence upon re-sentencing, but rather is applicable only under circumstances in which there is a "reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Alabama v. Smith,* 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (internal quotation and citation omitted).

¶ 15 The United States Supreme Court has not spoken on the issue of exactly what constitutes an "increase" in prison sentence for purposes of applying the *Pearce* holding in a case involving multiple convictions. The federal circuit courts have split on the issue, and our research has revealed no Pennsylvania cases that address it directly. However, this issue goes to the heart of Appellant's argument. Although the parties have not presented any argument relying on decisional law from other jurisdictions, we briefly summarize the divergent positions taken by different federal circuit courts on this issue, as we believe that they are helpful in focusing both parties' arguments.

¶ 16 The position of the majority of the circuit courts is that, to determine whether there has been an increase in sentence upon re-sentencing in a case with multiple convictions, the court must compare the new sentence to the *total aggregate* sentence originally imposed for *all* convictions. *See United States v. Murray,* 144 F.3d 270, 275 (3d Cir.1998) (rejecting a due process claim based on *Pearce* because the appellant's new federal sentence, to life imprisonment, did not exceed the total length of his original sentence and there was no evidence of judicial vindictiveness); *Kelly v. Neubert,* 898 F.2d 15 (3d Cir.1990) (rejecting a *Pearce* challenge to a sentence imposed by a New Jersey state court, which, following the vacation of two of the defendant's convictions, had re-sentenced him to a lesser total aggregate sentence than originally imposed, but had increased the sentences on several of the individual remaining counts); *United States v. Campbell,* 106 F.3d 64 (5th Cir.1997) (rejecting a *Pearce* challenge to a sentence imposed by a federal district court which, following reversal of two of the defendant's convictions, had re-sentenced him to a lesser total aggregate sentence, but had increased substantially the sentence on his one remaining conviction; also expressly adopting the majority aggregate approach and summarizing the views taken by the other circuits); *Sexton v. Kemna,* 278 F.3d 808 (8th Cir.2002) (rejecting a *Pearce* challenge to a sentence imposed by a Missouri state court, which had imposed the same total aggregate sentence following the defendant's retrial for rape and several counts of sodomy as it had imposed after his first trial, even though the defendant had been acquitted of rape upon the second trial, but not upon the first). As summarized by *Campbell, supra* at 67–68,

seven circuits—the 1st, 3rd, 4th, 5th, 7th, 9th, and 10th—have adopted the total aggregate approach in determining whether a sentence has been increased upon re-sentencing for purposes of a *Pearce* challenge.[4]

¶ 17 In contrast, only two circuits—the 2nd and the 11th—have adopted an alternate approach, referred to as the "count-by-count" or "remainder aggregate" approach, whereby the court compares the new sentence to the original sentence from which has been subtracted the sentence imposed for the reversed or dismissed counts. In other words, to compare quantitatively the original and new sentences under this approach, the court considers *only* those convictions that remain intact upon remand and re-sentencing. *See United States v. Monaco*, 702 F.2d 860, 885 (11th Cir.1983); *see also Sexton, supra* at 816–18 (Arnold, J., dissenting) (summarizing the minority, count-by-count approach and concluding based on that approach that *Pearce* had been violated when a defendant was convicted of fewer offenses on retrial but nonetheless was given a sentence identical in length to the sentence he received after his first trial).

## DUE PROCESS CHALLENGE

■ ¶ 18 We turn now to the case *sub judice*. Appellant contends that his sentence implicates *Pearce* because following reversal of his convictions for aggravated assault, the re-sentencing court imposed a higher sentence for the remaining, lesser offenses than that which had been originally imposed for those same offenses. Appellant originally had been sentenced to concurrent terms of 3½ to 7 years in prison for each of his 2 assault convictions, and to 4 prison terms of 1 to 2 years for his other 4 convictions, each sentence to be served concurrently to the assault sentence, for a total aggregate sentence of 3½ to 7 years. On remand, following the reversal of his assault convictions, he was re-sentenced to the same total aggregate term of 3½ to 7 years in prison. To maintain the original aggregate sentence, the trial court imposed *consecutive* terms of 1 to 2 years each for 3 of Appellant's remaining convictions and ½ to 1 year for his fourth remaining conviction. Appellant's view is that this new sentence invokes the *Pearce* presumption of vindictiveness because *in total* it is greater than the aggregate sentence of 1 to 2 years in prison that was originally imposed *for these four offenses*. By Appellant's rationale, to avoid the holding of *Pearce*, he should have been sentenced, at most, to 1 to 2 years in prison. In essence, although Appellant does not cite decisional law from the circuit courts, he urges us to adopt a position similar to the "count-by-count" or "remainder aggregate" approach taken by the minority of federal circuits.

¶ 19 The Commonwealth, on the other hand, argues that Appellant's sentence was *not* increased after re-sentencing, pointing out that Appellant was originally sentenced to 3½ to 7 years in prison, and he received a sentence of exactly the same length on remand. In the Commonwealth's view, because Appellant's total aggregate sentence was not increased, the *Pearce* presumption is not implicated. Thus, although like Appellant the Commonwealth does not cite decisional law from other jurisdictions, the Commonwealth in essence urges us to adopt a position similar to the "total aggregate" approach taken by the majority of federal circuits, including the Third Circuit.

---

**4.** None of the majority view cases that we have found addresses the specific issue of converting concurrent sentences into consecutive sentences, as presented in the instant case.

¶ 20 After careful consideration of the issues involved and thorough review of Pennsylvania law, we decline to adopt the count-by-count or remainder aggregate position urged by Appellant because we believe that it ignores the realities of sentencing in this Commonwealth and is not compatible with decisional law from our Supreme Court and this Court. We consider our Supreme Court's decision in *Goldhammer, supra,* to be relevant to the instant case even though the *Goldhammer* court did not directly address a due process argument. In *Goldhammer,* 34 of an appellant's 56 theft convictions were reversed on appeal; nonetheless, our Supreme Court stated that on remand a resentence to a prison term identical in length to that originally imposed would not constitute an increased sentence, even though only 22 convictions had survived appeal and the original sentence had been based solely on one of the reversed convictions. *Goldhammer, supra* at 595, 517 A.2d at 1284. As revealed by *Goldhammer, supra,* and many other opinions, including *Johnson, supra,* and *Grispino, supra,* the appellate courts have clearly recognized that after a trial court has imposed sentence on a defendant convicted of multiple related counts, the individual components of the sentence cannot be dissected out and required to stand alone, because the components are interrelated and designed to operate in concert as a structural whole. For this reason, when a sentencing scheme has been disrupted, the matter is remanded to the trial court for reformulation of a *new* sentencing scheme, which requires examining and applying anew this Commonwealth's basic, well-established sentencing principles.

¶ 21 We decline to set forth a rule that would invoke the *Pearce* presumption of judicial vindictiveness under circumstances where, as here, after thorough reconsideration of the relevant factors, the trial court

has decided to restructure the sentence in order to give effect to its original sentencing scheme, thereby imposing on remand a total aggregate sentence of identical length to that originally imposed. Consistent with most of the federal circuit courts, we do not believe that *Pearce* requires such a narrow interpretation. Furthermore, we believe that it could in some cases unnecessarily and ill-advisedly hamper the sound discretion which lies with the trial courts on matters of sentencing in this Commonwealth. Therefore, we hold that for purposes of determining the applicability of the *Pearce* presumption of judicial vindictiveness, a sentence is not "increased" when on remand the trial court imposes a total aggregate sentence identical to that originally imposed.

¶ 22 In Appellant's case, his total aggregate sentence on remand was identical in length to that originally imposed, and thus his sentence was not increased on re-sentencing. That the trial court on remand maintained the total aggregate length of Appellant's sentence (3½ to 7 years) by imposing the remaining individual sentences consecutively instead of concurrently does not alter the conclusion that the total aggregate length *was not increased.* This Court has oft stated that the discretion to impose individual sentences consecutively or concurrently lies with the trial court. *Commonwealth v. Pass,* 914 A.2d 442, 446–47 (Pa.Super.2006).

¶ 23 Furthermore, our conclusion is not altered by the fact that remand and re-sentencing were prompted by reversal of two of Appellant's convictions. Appellant appears to argue that a trial court's decision to restructure a sentence on remand to give effect to the sentencing scheme originally contemplated is proper only where no convictions have been reversed on appeal and remand is required for other reasons, *e.g.,* because the trial court ig-

674 ■

nored the merger of two offenses. We do not read our decisional law to suggest such a distinction. Indeed, *Goldhammer, supra* at 595, 517 A.2d at 1284, directly contradicts Appellant's argument by sanctioning a sentence on remand identical to the original sentence even though the remand was necessitated by the reversal of some of the appellant's convictions. Whether remand is the result of reversal of one or more convictions or vacation of an illegal sentence, we conclude that the trial court has the same discretion and responsibilities in re-sentencing.

■ ¶ 24 An important aspect of the trial court's responsibilities in re-sentencing, just as in sentencing, is to provide the reasons for the new sentence that it imposes. *See* 42 Pa.C.S.A. § 9721(b). This is a statutory requirement and nothing in our holding should—or indeed could—minimize in any way the trial court's duty to explain the rationale behind its sentence.

¶ 25 In the instant case, contrary to the arguments presented in Appellant's second issue, the court provided legitimate and proper reasons for re-sentencing Appellant to a total aggregate term of imprisonment identical to that imposed originally. The court made expressly clear that a 1 to 2 year sentence would *not* be sufficient punishment for Appellant's heinous crimes. (Notes of Testimony Re-sentencing Hearing ("N.T."), 1/14/05, at 22–23). The court cited uncontroverted evidence that Appellant's car had struck the victims' bodies with tremendous force, breaking the car's windshield with a victim's head and causing the victims to be knocked respectively 39 and 79 feet from the point of impact.

(*Id.* at 27). In addition, the court recognized that Appellant did not just flee from the scene after causing such a serious accident, but days later was still attempting to hide his car from police and thus to escape any responsibility for the victims' serious injuries. (*Id.* at 26). Finally, the court referred to Appellant's long-standing refusal to purchase insurance for his motor vehicle and his numerous citations over a long period of time for driving with a suspended license. (*Id.*) From this evidence the court reasonably deduced that Appellant consistently had disregarded the law. (*Id.*) In its written opinion, the trial court reiterated that the basis of the sentence imposed was Appellant's particularly egregious conduct, which resulted in serious bodily injury to two persons, followed by his attempts to conceal his responsibility for the accident and the injuries. (Trial Court Opinion, filed 5/25/06, at 2). Thus, the trial court sufficiently explained, on the basis of appropriate factors, why it determined that Appellant should be re-sentenced in such manner as to give effect to the original sentencing scheme, even though his convictions for aggravated assault had been reversed.[5]

¶ 26 In Appellant's third and final issue, he contends that, on re-sentencing, the trial court punished him for conduct that this Court, on direct appeal, had found insufficient to support an aggravated assault conviction. *See McHale, supra,* 858 A.2d at 1209. Appellant seriously misreads this Court's prior decision on his case. On direct appeal, Appellant challenged, *inter alia,* the sufficiency of the evidence for his aggravated assault convictions. This Court concluded that indeed

5. We agree with Appellant that some of the trial court's comments following a courtroom disruption by members of Appellant's family were improvident. However, a reading of the entire transcript makes clear that the inappropriate behavior of certain spectators in the courtroom had no impact on the sentence imposed. The court announced its decision to impose a sentence identical in length to the original sentence **prior to** the outburst that prompted the court's improvident statements. (*See* N.T. at 24).

the evidence was insufficient as a matter of law to establish that Appellant had acted with the requisite *mens rea* of malice, and accordingly reversed his judgment of sentence for aggravated assault. *Id.* at 1211–12. However, nothing in this Court's opinion suggests that the panel disputed the facts of the case as found by the trial court. The panel concluded only that those facts did not establish malice. The facts as found by the trial court not only should, but indeed must, be taken into consideration by the court when it imposes sentence. Appellant's contention to the contrary is totally lacking in merit.

¶ 27 In sum, after careful review of the facts of the instant case and the relevant law, we conclude that Appellant's issues have no merit, and therefore we affirm his judgment of sentence.

¶ 28 Judgment of sentence affirmed.