J-S28041-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KENDELL CHARLES FOSTER, | : | |
| | : | |
| Appellant | : | No. 1900 WDA 2016 |

Appeal from the Judgment of Sentence April 20, 2016
in the Court of Common Pleas of Erie County,
Criminal Division, at No(s): CP-25-CR-0001224-2013

BEFORE:   OLSON, MOULTON, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.:   **FILED JULY 10, 2017**

Kendell Charles Foster (Appellant) appeals from the April 20, 2016 judgment of sentence of an aggregate term of 37 to 74 years of imprisonment following his convictions for, *inter alia*, attempted homicide, burglary, and two counts of recklessly endangering another person (REAP). We affirm.

> The facts underlying Appellant's convictions are as follows.

> [Appellant] was one of three armed intruders wearing hoodies and masks who kicked in the door of Robert Gore's apartment in the City of Erie on December 20, 2012.

> Upon entry, the invaders confronted an occupant in the living room, Ledomperignon Eady, stuck a gun in his face and told him not to move. They were in the process of grabbing Eady by the leg and relocating him when they were distracted by noises in Gore's bedroom. They let go of Eady and headed to Gore's bedroom. Once freed, Eady hid in a closet near the living room.

*Retired Senior Judge assigned to the Superior Court.

At that time, Robert Gore was in his bedroom along with Shawanda Zigler. When Zigler heard their apartment door being kicked in, she immediately hid in the closet in Gore's bedroom.

From his vantage point, Eady could see some of what was occurring in Gore's bedroom as reflected in a mirror in Gore's bedroom. These observations were made through a crack in the closet door. Eady heard two shots being fired in Gore's bedroom.

Gore was armed with his own gun when the three invaders entered his bedroom. There ensued a struggle over Gore's gun during which [Appellant] was shot in the right, upper thigh. Gore was then shot in the chest by a person identified by [Appellant] as "D." [Appellant] then shot Gore at close range in the head.

After these shots, Eady heard one of the assailants being ordered to "bang the other one," meaning to shoot Eady.

The three assailants then fled the apartment. Before leaving, they discussed whether both Gore and Eady had been shot. Satisfied both had been shot, the trio then ran out of the building. Eady observed one of the assailants to be limping.

Once the coast was clear, Eady immediately went to the bedroom to check on Gore, who was found unconscious and bleeding from gunshot wounds to the head and chest. Eady ran to a neighboring apartment and called the police at approximately 11:40 p.m.

Shortly after midnight on December 21, 2012, [Appellant] telephoned a friend, Letonia Pearson, in Farrell, Pennsylvania. [Appellant] indicated to Pearson he had been shot in the thigh in the course of a robbery and needed her assistance. [Appellant] wanted Pearson to pick him up in Erie. Pearson refused to drive to Erie to pick up [Appellant].

From Erie, [Appellant] also telephoned another friend, Carolyn Shannon, telling her he had been shot. [Appellant] told Shannon he needed a ride to Meadville, Pennsylvania. Shannon was in Conneaut, Pennsylvania at the time. Shannon borrowed

- 2 -

a white truck from a friend, drove to Erie and picked up [Appellant] at 5th and Wallace Streets in Erie.

[Appellant] initially told Shannon to drive him to Meadville but then indicated she should drive instead to Farrell, PA, so he could pick up his identification cards from Pearson's house in order to seek medical treatment. Shannon drove him to Pearson's house in Farrell, Pennsylvania. [Appellant] arrived at Pearson's home around 8:00 a.m. with a belt tied around his leg.

[Appellant] told Pearson he and two others went to Gore's apartment to commit a robbery. [Appellant] related that he and the victim, Gore, struggled over possession of a gun. During the struggle over the gun, [Appellant] was shot in the thigh. [Appellant] told Pearson that "D" shot Gore in the chest. [Appellant] gained control of the gun from "D" and shot Gore in the head.

[Appellant] wanted Pearson to remove the bullet from his leg and/or drive him to a hospital across the state line in Ohio. Pearson cleaned the wound but refused to drive him to Ohio or render any further aid.

Instead, as she was on supervision and did not want to get into any trouble, Pearson contacted her probation officer, Timothy Cox. Pearson related the circumstances to Cox, who came to her home with the Farrell police.

[Appellant] was arrested at Pearson's home by the Farrell Police Department, who then notified the authorities in Erie, PA. The Erie police drove to Farrell and met with the Farrell police.

Thereafter, [Appellant] related to Detective Paul Bizzarro of the Erie Police Department he received the gunshot wound to his leg in the course of a robbery in New Castle, Pennsylvania.

**Commonwealth v. Foster**, 122 A.3d 1126 (Pa. Super. 2015) (unpublished memorandum at 2-4) (quoting Trial Court Opinion, 3/24/2014, at 1-3 (citations omitted)).

Upon this evidence, a jury convicted Appellant of attempted homicide, aggravated assault, burglary, robbery, conspiracy to commit robbery, possession of an instrument of crime, and three counts of REAP (one each as to victims Gore, Eady, and Zigler). On November 26, 2013, the trial court sentenced Appellant to an aggregate term of 45 to 90 years of incarceration, plus terms of probation on two of the REAP counts (counts 9 and 10).

On direct appeal, the trial court indicated, and this Court agreed, that the evidence was insufficient to support the convictions for robbery and conspiracy to commit robbery.[1] **Foster**, 122 A.3d 1126 (unpublished memorandum at 8-9). Therefore, this Court vacated those convictions and remanded the case for resentencing.

On April 20, 2016, the trial court resentenced Appellant to an aggregate term of 37 to 74 years of imprisonment, which included sentences of imprisonment on counts 9 and 10. Appellant timely filed a motion to modify sentence, indicating that replacing the probationary sentences for REAP as to victims Eady and Zigler with consecutive, 12-to-24-month sentences of imprisonment appeared to be the result of vindictiveness. Motion to Modify Sentence, 4/28/2016, at ¶ 4. The trial court denied Appellant's motion by order of April 28, 2016.

---

[1] The author of this memorandum dissented, opining that the evidence was sufficient to sustain all of Appellant's convictions. **Foster**, 122 A.3d 1126 (unpublished memorandum) (Strassburger, J., concurring and dissenting).

On September 15, 2016, Appellant filed a petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Counsel was appointed and filed a supplemental petition. By order of November 15, 2016, the court granted Appellant's petition, reinstating *nunc pro tunc* Appellant's right to appeal his April 20, 2016 judgment of sentence. Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant states the following question for our review: "Whether the trial court abused its discretion and committed legal error in fashioning the resentencing upon remand from the Superior Court of Pennsylvania in that the [trial c]ourt modified the sentences imposed at counts 9 and 10 from probationary terms to terms of incarceration as a product of judicial vindictiveness?" Appellant's Brief at 2.

We consider this question mindful of our standard of review.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

> * * *

> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should

refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

***Commonwealth v. Antidormi***, 84 A.3d 736, 760-61 (Pa. Super. 2014) (internal citations and quotation marks omitted).

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

(1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (some citations omitted).

Here, Appellant filed a notice of appeal after preserving the issue by filing a motion to modify sentence, and his brief contains a statement pursuant to Pa.R.A.P. 2119(f). We thus consider whether there is a substantial question that Appellant's sentence is inappropriate.

Appellant contends that the imposition of terms of imprisonment instead of probation on two of his REAP convictions creates the appearance of judicial vindictiveness in resentencing Appellant after he exercised his appeal rights. Appellant's Brief at 3-4. Appellant's claim of vindictiveness

raises a substantial question.[2] ***Commonwealth v. Tapp***, 997 A.2d 1201, 1203 (Pa. Super. 2010). Accordingly, we consider the applicable legal principles.

In ***North Carolina v. Pearce***, 395 U.S. 711 (1969), *overruled on other grounds*, ***Alabama v. Smith***, 490 U.S. 794 (1989), the United States Supreme Court held that when a new trial is granted to a defendant and the defendant is re-convicted, a due process concern is presented if the defendant is sentenced to a harsher sentence than that originally imposed. ***See*** 395 U.S. at 725-726. To guard against this possibility, the Court established a "presumption of vindictiveness" where a court increases a defendant's sentence upon resentencing. ***Id***. In order to rebut the presumption, the sentencing court must show that the increase in the new sentence is premised upon identifiable conduct committed by the defendant after the first sentencing proceeding. ***See id***.

The holding of ***Pearce*** was subsequently modified by ***Smith***, in which the Court held that the ***Pearce*** presumption should be applied only if there

---

[2] In his 2119(f) statement, Appellant also claims that the trial court failed to give adequate consideration to mitigating factors or offer sufficient reasons for imposing consecutive sentences. Appellant's Brief at 4. Neither of these claims raises a substantial question. ***See***, ***e.g.***, ***Commonwealth v. Disalvo***, 70 A.3d 900, 903 (Pa. Super. 2013) ("[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review."); ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 784–85 (Pa. Super. 2015) "[A] sentencing court generally has discretion to impose multiple sentences concurrently or consecutively, and a challenge to the exercise of that discretion does not ordinarily raise a substantial question.").

is a "reasonable likelihood ... that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Smith*, 490 U.S. at 799. "Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Id*. The *Pearce* presumption applies not only where a defendant is resentenced following a new trial, but also where a defendant is resentenced following an appeal. *See*, *e.g.*, *Commonwealth v. Hermankevich*, 286 A.2d 644, 646 (Pa. Super. 1971).

Appellant's argument is as follows:

> The [trial c]ourt abused its discretion and committed legal error in fashioning the resentencing upon remand from the Superior Court of Pennsylvania in that the [c]ourt modified the sentences imposed at counts 9 and 10 from probationary terms to terms of incarceration of 12 to 24 months, respectively, imposed consecutive to the remaining counts. While the [trial c]ourt in imposing the resentencing indicated that the modification was not vindictive given the vacating of the original sentence for robbery and conspiracy to commit robbery, the appearance of vindictive intent remains. Based upon the sentencing structure, [Appellant] will be 86 years of age at the time that he attains the minimum term of the sentence as to the remaining counts imposed consecutively to the sentence at docket number 3024 of 2013; as a consequence there is no reason that necessitates replacing the two years of probation with an additional 2 to 4 years of incarceration.

*Id.* at 3-4.

Appellant's aggregate sentence after resentencing was 37 to 45 years of imprisonment; his original sentence was 45 to 90 years of imprisonment. Thus, although the sentences for two of the counts increased, Appellant's

new aggregate sentence is actually **less** than it was before he exercised his appellate rights.

This Court has rejected specifically Appellant's "'count-by-count' or 'remainder aggregate' approach" to determining whether a defendant received a harsher sentence when resentenced after a remand, and rather adopted the "'total aggregate' approach." ***Commonwealth v. McHale***, 924 A.2d 664, 672-73 (Pa. Super. 2007). Indeed, preserving the integrity of a prior sentencing scheme is recognized as a legitimate concern at resentencing. ***Commonwealth v. Walker***, 568 A.2d 201, 205 (Pa. Super. 1989).

> [T]he appellate courts have clearly recognized that after a trial court has imposed sentence on a defendant convicted of multiple related counts, the individual components of the sentence cannot be dissected out and required to stand alone, because the components are interrelated and designed to operate in concert as a structural whole. For this reason, when a sentencing scheme has been disrupted, the matter is remanded to the trial court for reformulation of a new sentencing scheme, which requires examining and applying anew this Commonwealth's basic, well-established sentencing principles.

***McHale***, 924 A.2d at 673.

Thus, the trial court in the instant case lawfully could have adjusted Appellant's individual sentences to re-impose an aggregate sentence of 45 to 90 years of incarceration. Instead, Appellant received a shorter overall sentence. We discern no abuse of the trial court's discretion in so doing. ***See***, ***e.g.***, ***McHale***, 924 A.2d at 673 (holding that, following reversal of two

of the appellant's convictions, re-imposition of the same aggregate sentence by changing the sentences on some of the remaining counts to running consecutively rather than concurrently was within the trial court's discretion).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2017