J-S14024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOAN GENSIAK | |
| Appellant | No. 677 MDA 2015 |

Appeal from the Judgment of Sentence October 16, 2014
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0002134-2013

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 07, 2016**

Appellant, Joan Gensiak, appeals from the judgment of sentence entered October 16, 2014, in the Court of Common Pleas of Lackawanna County, following her guilty plea to Neglect of a Care-Dependent Person, graded as a felony of the first degree, and Endangering the Welfare of Children, graded as a felony of the third degree.[1] We affirm the convictions, but vacate the judgment of sentence and remand for resentencing.

The trial court summarized the history of this case as follows.

> On March 19, 2013, Robert Gensiak (hereinafter "Robert"), a thirty-two (32) year old male with Down Syndrome, who was the brother of [the Appellant,] was admitted to the hospital

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2713 and 4304(a)(1), respectively.

because he was semi-responsive and unable to stand up. [Appellant] resided in the home with Robert.

At the preliminary hearing, David Utter testified that he was the lead emergency room technician at the hospital where Robert was admitted. He testified Robert was covered in a rash, and was emitting a strong, foul smelling odor. He testified that Robert weighed sixty[-]nine (69) pounds. While at the hospital, Robert went into cardiac arrest and passed away on March 20, 2013.

The Lackawanna County District Attorney's Officer charged [Appellant] with four (4) charges related to her brother's death and the endangerment of her two (2) year old daughter, who also resided in the home. [Appellant's] mother, Susan Gensiak, and [Appellant's] sister, Rebekah Gensiak, were also charged in relation to Robert Gensiak's death. [Appellant] was charged with Murder of the Third Degree …, Neglect of Care-Dependent Person …, Involuntary Manslaughter …, and Endangering Welfare of Children-Parent/Guardian/Other Commits Offense….

On May 8, 2014, all three (3) co-defendants pled guilty before [the trial court]. [Appellant] entered a guilty plea to [Neglect of Care-Dependent Person and Endangering the Welfare of Children.] At the time of the guilty plea, [the trial court] engaged in an extensive colloquy of the [Appellant]. The [Appellant] … stated that she had the opportunity to go through the four[-]page guilty plea colloquy with her attorney. She further stated that her lawyer answered any and all questions about the guilty plea colloquy and that she had an understanding of her guilty plea and what she was doing. She also conceded that there was no agreement between herself, her attorneys and the District Attorney's Office regarding sentencing. She additionally acknowledged that she understood the [c]ourt was not a party to any agreement she may have had regarding sentencing. When questioned, she answered she knew she had the right to a jury trial, and understood her attorney's would have the opportunity to cross-examine any witnesses called by the Commonwealth and to object to any evidence the District Attorney's Office sought to have admitted to trial.

During the colloquy of the [Appellant], the Assistant District Attorney read the allegations of the criminal information for both crimes into the record. [Appellant accepted responsibility and admitted to committing the crimes with which

she had been charged.] … [Appellant] stated that she was freely and voluntarily entering into this plea. … Accordingly, [the trial court] found [Appellant] entered into the plea knowingly, freely and voluntarily.

Prior to sentencing, both attorneys for the [Appellant], on July 21, 2014 and August 26, 2014, respectively, filed separate motions for the appointment of a psychiatrist to aid in the sentencing of the [Appellant]. [Appellant's] attorneys requested that a psychiatrist be appointed at the rate of five hundred dollars ($500.00) per hour with a cap of five thousand dollars ($5,000.00). [The court] granted [Appellant's] request for a psychiatrist, but capped the available amount at two thousand dollars ($2,000.00). Defense Counsel declined to use the psychiatrist, stating in a letter to the [c]ourt that two thousand dollars ($2,000.00) was an insufficient amount.

Trial Court Opinion, 6/2/15 at 1-4.

The court sentenced Appellant to a term of six to fifteen years' imprisonment. Thereafter, Appellant filed a post-sentence motion to withdraw her guilty plea as well as a motion for reconsideration of sentence. The trial court denied Appellant's motions following a hearing. This timely appeal followed.

Appellant raises the following issues for our review.

I.      Whether, where Appellant was an [indigent], mentally-ill person, charged with third degree murder, the lower court erred in [failing to appoint] a mental health expert to aid Appellant's court-appointed counsel at sentencing?

II.     Whether, where the Commonwealth misled Appellant into pleading guilty, by telling her that her identically-situated co-defendant was pleading guilty to an identical offense, an untrue fact, the lower court erred in re[f]using to allow Appellant to withdraw her guilty plea and proceed to trial?

III.    Whether, by failing to articulate sufficient grounds on the record and by failing to properly weigh the mitigating circumstances present and by sentencing Appellant in a wildly disproportionate manner to that of her identically

- 3 -

situated co[-]defendant, the lower court erred in sentencing Appellant outside of the aggr[a]vated range?

Appellant's Brief at 7 (unnecessary capitalization omitted).

Appellant first contends that the trial court erred when it allegedly denied her motion for the appointment of a psychiatric expert to assist at sentencing. Although Appellant concedes that the trial court agreed to provide funds for an expert, she argues that the court's decision to provide less money than the $5,000.00 she requested amounted to a tacit denial of Appellant's motion.

Our standard of review, as it relates to the appointment of a defense expert in a criminal matter, is as follows.

> The provision of public funds to hire experts to assist in the defense against criminal charges is a decision vested in the sound discretion of the court and a denial thereof will not be reversed absent an abuse of that discretion.

***Commonwealth v. Cannon***, 954 A.2d 1222, 1226 (Pa. Super. 2008) (citation omitted). "[T]he Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests one." ***Id***. at 1225 (citation omitted).

Appellant next claims that the trial court erred when it denied her post-sentence motion to withdraw her guilty plea. We note that,

> [p]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage entry of guilty pleas as sentence-testing devices. A defendant must demonstrate that manifest injustice would result if the court were to deny his post-sentence motion to withdraw a guilty plea. Manifest injustice may be established if the plea was not tendered knowingly,

- 4 -

intelligently, and voluntarily. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. A deficient plea does not *per se* establish prejudice on the order of manifest injustice.

*Commonwealth v. Broaden*, 980 A.2d 124, 129 (Pa. Super. 2009) (internal quotes and citations omitted).

To be valid, a guilty plea must be knowingly, voluntarily and intelligently entered. [A] manifest injustice occurs when a plea is not tendered knowingly, intelligently, voluntarily, and understandingly. The Pennsylvania Rules of Criminal Procedure mandate pleas be taken in open court and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. Under [Pa.R.Crim.P.] Rule 590, the court should confirm, *inter alia,* that a defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) he is giving up his right to trial by jury; (4) and the presumption of innocence; (5) he is aware of the permissible ranges of sentences and fines possible; and (6) the court is not bound by the terms of the agreement unless the court accepts the plea. The reviewing Court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise.

*Commonwealth v. Prendes*, 97 A.3d 337, 352 (Pa. Super. 2014), *appeal denied*, 105 A.3d 736 (Pa. 2014) (internal quotes and citations omitted).

We have reviewed Appellant's first two issues raised on appeal, along with the briefs of the parties, the certified record and the applicable law. Having determined that the Honorable Margaret A. Bisignani Moyle's June 2, 2015 opinion ably and comprehensively disposes of these issues, with appropriate reference to the record and without legal error, we affirm

Appellant's first two issues on the basis of that opinion. **See** Trial Court Opinion, 6/2/15 at 6-12.

We write independently to address Appellant's final issue, which challenges the discretionary aspects of her sentence. Preliminarily, we must determine whether Appellant has the right to seek permission to appeal the sentencing court's exercise of its discretion. **See Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010). When an appellant challenges the discretionary aspects of his sentence, we utilize a four-part test to determine:

> (1) whether appellant has filed a timely notice of appeal, **see** Pa. R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa. R. Crim. P. [720]; (3) whether appellant's brief has a fatal defect, Pa. R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Id**. (internal citations omitted).

Here, Appellant challenged her sentence in a post-sentence motion and filed a timely appeal. Appellant's appellate brief also contains the requisite Rule 2119(f) concise statement. We must now decide whether Appellant's challenge to the discretionary aspects of her sentence raises a substantial question.

"A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental

norms which underlie the sentencing process." ***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa. Super. 2014), ***appeal denied***, 117 A.3d 297 (Pa. 2015) (citation omitted). "[W]e cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Christine***, 78 A.3d 1, 10 (Pa. Super. 2013), ***affirmed***, 125 A.3d 394 (Pa. 2015) (citation omitted).

Appellant claims in her Rule 2119(f) statement that the trial court improperly imposed a sentence outside of the aggravated range of the sentencing guidelines. A claim that the sentencing court imposed a sentence outside of the guidelines without specifying sufficient reasons presents a substantial question for our review. ***See Commonwealth v. Holiday***, 954 A.2d 6, 10 (Pa. Super. 2008).

Our review of the sentencing transcript reveals that although the sentencing court announced that it was imposing an *aggravated range* sentence for the offense of Neglect of a Care-Dependent Person, the court proceeded to sentence Appellant *outside* of the sentencing guidelines. ***See*** N.T., Sentencing, 10/16/15 at 21. The "Pennsylvania Commission on Sentencing Guideline Sentencing Form" contained within the certified record indicates that that offense carried an offense gravity store of ten, ***see also*** 204 Pa.Code §§ 303.3 and 303.15, and that Appellant had a prior record score of zero. The sentencing guidelines therefore provide for a standard range sentence of 22 to 36 months imprisonment, with an aggravated range

sentence of 36 to 48 months imprisonment. ***See id***. at § 303.16(a). The trial court's sentence of five to ten years' imprisonment exceeded the guideline range.

"In sentencing outside of the guidelines, the court must demonstrate that it understands the sentencing guidelines ranges." ***Commonwealth v. Garcia–Rivera***, 983 A.2d 777, 780 (Pa. Super. 2009). The Sentencing Code specifies that "in every case where the court imposes a sentence ... outside the guidelines adopted by the Pennsylvania Commission on Sentencing ... the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." 42 Pa.C.S.A. § 9721(b). Section 9781(c)(1) of the Sentencing Code makes clear that "the appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds [that] the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously."

Because the record in the instant case does not indicate that the trial court properly considered the sentencing guidelines, and it appears that the trial court erroneously believed it was sentencing Appellant within the sentencing guidelines, when it in fact sentenced Appellant beyond the guidelines, we are constrained to vacate the judgment of sentence and remand for resentencing. ***See id***. ***See also Commonwealth v. Byrd***, 657 A.2d 961 (Pa. Super. 1995) (vacating the judgment of sentence where the sentencing court failed to set forth the permissible range of sentences under the guidelines, and provided reasons on the record to support what it

believed was a sentence in the aggravated range, while actually sentencing the appellant outside of the guidelines without providing a contemporaneous statement of its reasons for such deviation). As our decision upsets the trial court's sentencing scheme, we must vacate the entire judgment of sentence and remand for resentencing.[2] ***See generally Commonwealth v. Tanner***, 61 A.3d 1043, 1048 (Pa. Super. 2013).

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/7/2016

---

[2] Due to our disposition of this issue, we decline to address Appellant's additional claim that the sentencing court failed to adequately explain the disparity between Appellant's sentence and that of her co-defendant, Rebekah Gensiak.

CLERK OF JUDICIAL
RECORDS CRIMINAL
DIVISION

COMM. OF PENNSYLVANIA : IN THE COURT OF COMMON
: PLEAS OF LACKAWANNA
: COUNTY

VS. :

: CRIMINAL DIVISION
:

JOAN GENSIAK : 2013 CR 2134

---

## MEMORANDUM OPINION PURSUANT TO Pa. R. A. P. 1925(a)

**BISIGNANI MOYLE, J.**

### I. INTRODUCTION

The following Opinion, pursuant to the requirements under Pa. R.A.P. 1925(a), addresses the four (4) issues raised by Defendant/Appellant Joan Gensiak in her Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b).

### II. FACTUAL/PROCEDURAL HISTORY

On March 19, 2013, Robert Gensiak (hereinafter "Robert"), a thirty-two (32) year old male with Down Syndrome, who was the brother of the Defendant, Joan Gensiak (hereinafter "Defendant" or "Appellant") was admitted to the hospital because he was semi-responsive and unable to stand up. N.T. 9/27/13 at p. 46. Defendant resided in the home with Robert. N.T. 9/27/13 at p. 46.

At the preliminary hearing, David Utter testified that he was the lead emergency room technician at the hospital where Robert was admitted. He testified Robert was covered in a rash, and was emitting a strong, foul smelling

1

odor. N.T. 9/27/13 at p. 46. He testified that Robert weighed sixty nine (69) pounds. N.T. 9/27/13 at p. 53. While at the hospital, Robert went into cardiac arrest and passed away on March 20, 2013. N.T. 9/27/13 at p. 56.

The Lackawanna County District Attorney's Office charged Defendant, Joan Gensiak, with four (4) charges related to her brother's death and the endangerment of her two (2) year old daughter, who also resided in the home. Defendant's mother, Susan Gensiak, and Defendant's sister, Rebekah Gensiak, were also charged in relation to Robert Gensiak's death. Defendant was charged with Murder of the Third Degree in violation of Title 18 Pa. C.S.A. § 2502, Neglect of Care-Dependent Person, in violation of Title 18 Pa. C.S.A. § 2713, Involuntary Manslaughter, in violation of Title 18 Pa. C.S.A. § 2504, and Endangering Welfare of Children-Parent/Guardian/Other Commits Offense, in violation of Title 18 Pa. C.S.A. 4304(a)(1).

On May 8, 2014, all three (3) co-defendants pled guilty before this Court. Defendant Joan Gensiak entered a guilty plea to one (1) count of Neglect of Care-Dependent Person, graded as a felony of the first degree, in violation of Title 18 Pa. C.S.A § 2713 and one (1) count of Endangering Welfare of Children, graded as felony of the third degree, in violation of Title 18 Pa. C.S.A § 4304. At the time of the guilty plea, this Court engaged in an extensive colloquy of the Defendant.[1] The Defendant, upon this Court's questioning, stated that she had the opportunity to go through the four page guilty plea colloquy with her attorney. N.T. 5/18/14 at p. 5. She further stated that her

---

[1] Defendant's entire guilty plea colloquy by this Court can be found from pages three (3) through twenty-four (24) in the May 8, 2014 transcript.

2

lawyer answered any and all questions about the guilty plea colloquy and that she had an understanding of her guilty plea and what she was doing. N.T. 5/18/14 at p. 6, 13. She also conceded that there was no agreement between herself, her attorneys and the District Attorney's Office regarding sentencing. N.T. 5/18/14 at p. 16. She additionally acknowledged that she understood the Court was not a party to any agreement she may have had regarding sentencing. N.T. 5/18/14 at p. 16. When questioned, she answered she knew she had the right to a trial by jury, and understood her attorneys would have the opportunity to cross-examine any witnesses called by the Commonwealth and to object to any evidence the District Attorney's Office sought to have admitted to trial. N.T. 5/18/14 at p. 18.

During the colloquy of the Defendant, the Assistant District Attorney read the allegations of the criminal information for both crimes into the record. After the Assistant District Attorney read the allegations regarding the charge of Neglect of Care-Dependent Person, Defendant responded that she did in fact commit this crime, stating "I should have done more and....yes." N.T. 5/18/14 at p. 22. The Assistant District Attorney then read the allegations regarding the charge of Endangering the Welfare of a Child. N.T. 5/18/14 at p. 23. She admitted that she did in fact commit that crime and she "should have done more with her also." N.T. 5/18/14 at p. 23. Defendant stated that she was freely and voluntarily entering into this plea. N.T. 5/18/14 at p. 23. Her attorneys stated that in their opinion, the Defendant was entering into the plea freely and

3

voluntarily. N.T. 5/18/14 at p. 24. Accordingly, this Court found Defendant entered into the plea knowingly, freely and voluntarily. N.T. 5/18/14 at p. 24.

Prior to sentencing, both attorneys for the Defendant, on July 21, 2014 and August 26, 2014, respectively, filed separate motions for the appointment of a psychiatrist to aid in the sentencing of the Defendant. Defendant's attorneys requested that a psychiatrist be appointed at a rate of five hundred dollars ($500.00) per hour with a cap of five thousand dollars ($5,000.00). This Court granted Defendant's request for a psychiatrist, but capped the available amount at two thousand dollars ($2,000.00). Defense Counsel declined to use the psychiatrist, stating in a letter to the Court that two thousand dollars ($2,000.00) was an insufficient amount.

On October 16, 2014, this Court sentenced all three co-defendants. The Defendant was sentenced to six (6) years to fifteen (15) years in a State Correctional Institution. N.T. 10/16/14 at p. 21. On October 23, 2014, she filed a Motion to Withdraw Plea of Guilty as well as a Motion for Reconsideration of Sentence. On November 3, 2014, the Commonwealth filed an Answer to Defendant's Motion to Withdraw Guilty Plea. On December 17, 2014, this Court held a hearing on Defendant's Motions. Although she raised several arguments in her Motion to Withdraw Guilty Plea, by the time of the hearing, she abandoned all but one (1) argument. N.T. 12/17/14 at p. 109. Namely, she argued that she was not aware that her co-defendant, Rebekah Gensiak, pled guilty to a misdemeanor charge of Neglect of Care-Dependent Person. Rather, she was under the mistaken impression her sister pled to Neglect of Care-

4

Dependent Person graded as a felony. Defendant's Motion for Reconsideration overlapped with her Motion to Withdraw her Guilty Plea, only setting forth one additional argument. She raised the disparity between her sentence and the sentence of her sister co-defendant, arguing the range of prison terms were too disparate. On April 8, 2015, this Court issued an Order and an Opinion denying Defendant's Motions.

On April 13, 2015, Defendant filed her Statement of Matters Complained of on Appeal Pursuant to Rule 1925(b). Defendant raised the following four issues:

1. The trial court erred in refusing to appoint an appropriate Psychiatric and/or Psychological Expert Witness to assist Appellant and Appellant's Counsel at Sentencing in this matter.

2. The trial court erred in refusing to allow Appellant to withdraw her guilty plea after sentencing despite the fact that the Commonwealth made material misstatements to Appellant in inducing her plea in this matter.

3. The trial court erred in sentencing Appellant in the aggravated range in this case. The court failed to articulate sufficient and/or acceptable grounds for an aggravated range sentence on the record.

4. The trial court abused its discretion in sentencing Appellant. Specifically, the court sentenced Appellant in a wildly disproportionate manner to her co-defendant, Rebekah Gensiak who was similarly situated to her, without adequate reason for doing so.

Each of Defendant's four (4) issues complained of on appeal is discussed below.

5

### III. DISCUSSION

### A. Appointment of an Appropriate Psychiatric and/or Psychological Expert Witness

a. Defendant's Argument

Defendant asserts, on appeal, as follows:

(a) The trial court erred in refusing to appoint an appropriate Psychiatric and/or Psychological Expert Witness to assist Appellant and Appellant's Counsel at Sentencing in this matter.

b. Applicable Law

"Under the law of Pennsylvania, as in a majority of states, the appointment of an expert witness or an investigator to assist in the preparation of a defense is vested in the sound discretion of the trial court." Comm. v. Gelormo, 475 A.2d 765, 769 (Pa. Super. 1984). "There is no constitutional mandate, either federal or state, that experts be appointed at public expense to assist in the preparation of a defense whenever requested by one accused of crime." Id. citing United States ex rel. Smith v. Baldi, 344 U.S. 561, 568 (1953). "There is no obligation on the part of the Commonwealth to pay for the services of an expert." Com. v. Carter, 643 A.2d 61, 73 (1994) citing Commonwealth v. Williams, 561 A.2d 714, 718 (1989). In Carter, the trial court granted Defendant's request for a psychiatrist, but Defendant failed to use the testimony of the psychiatrist during trial. The Carter Court held "the appellant cannot now assert that he was prevented from presenting his case where he failed to utilize the experts approved by the court." Carter, 643 A.2d at 73.

6

c. Application

At the outset, this Court notes that the Court did not refuse to appoint a psychiatrist or psychological expert to assist with sentencing. Instead, this Court capped the total available funds at a reasonable amount ($2,000.00) to allow the appointment of either a psychiatrist or psychological expert to assist with sentencing. Defendant then chose to proceed without use of the two thousand dollars ($2,000.00) to hire an expert and proceed directly to sentencing.

"There is no is no obligation on the part of the Commonwealth to pay for the services of an expert." Carter, 643 A.2d at 73 (1994) citing Williams, 561 A.2d at 718. However, this Court was willing to provide a reasonable amount of money for a psychiatrist or psychologist. This Court calculated a reasonable amount for Defendant to use for a psychiatrist or psychologist and provided the Defendant the opportunity to use that amount. The Defendant declined to use that amount, and now is attempting to frame this Court's grant of two thousand dollars ($2,000.00) as a "refusal refusing to appoint an appropriate psychiatric and/or psychological expert witness."

Because this Court granted Defendant's request, even though this Court had no obligation to do so, and Defendant chose not to use the expert, Defendant's first matter complained of on appeal is without merit.

7

## B. **Refusal to Allow Appellant to Withdraw Guilty Plea After Sentencing**

a. Defendant's Argument

Defendant asserts, on appeal, as follows:

> (b) The trial court erred in refusing to allow Appellant to withdraw her guilty plea after sentencing despite the fact that the Commonwealth made material misstatements to Appellant in inducing her plea in this matter.

Defendant asserts that she should be allowed to withdraw her guilty plea post-sentence because she was unaware that her sister and co-defendant, Rebekah Gensiak, pled guilty to a misdemeanor. N.T. 12/17/14 at p. 10. This issue formed the basis of Defendant's argument in her motion to withdraw guilty plea, for which this Court held a hearing. In order to frame Defendant's argument more clearly, one must look at the procedural history of this case.

As stated above, Defendant, along with her mother, Susan Gensiak, and sister, Rebekah Gensiak, were each charged with several criminal offenses related to the death of Robert Gensiak. Rebekah Gensiak cooperated with the Commonwealth and testified at the preliminary hearing. N.T. 9/27/13 at p. 144-200. At the preliminary hearing, the District Attorney asked Rebekah Gensiak, "And did I ever offer you anything for your testimony today?" N.T. 9/27/13 at p. 145. Ms. Gensiak replied "[t]o plead to Neglect of Care-Dependent." N.T. 9/27/13 at p. 145.

On May 8, 2014, all three (3) co-defendants pled guilty before this Court. Susan Gensiak pled guilty to Murder of the Third Degree in violation of Title 18 Pa. C.S.A § 2502(C). Defendant then pled, as aforestated, to one (1) count

8

of Neglect of Care-Dependent Person, graded as a felony of the first degree, in violation of Title 18 Pa. C.S.A § 2713 and one (1) count of Endangering Welfare of Children, graded as felony of the third degree, in violation of Title 18 Pa. C.S.A § 4304. Finally, Rebekah Gensiak, in exchange for her cooperation, pled to one (1) count of Neglect of a Care-Dependent Person, graded as a misdemeanor of the first degree.

This Court sentenced Defendant, her mother, and her sister on October 16, 2014. On October 23, 2014, Defendant filed a Motion for Reconsideration and a Motion for Withdrawal of Guilty Plea. Defendant's counsel argued that they were unaware, until after sentencing, that Rebekah Gensiak pled guilty to a misdemeanor. N.T. 12/17/14 at p. 99. Defendant's counsel argued that when Rebekah Gensiak stated that she was going to plea to Neglect of a Care-Dependent Person, they assumed she was going to plea to that crime, graded as a felony. A hearing was held on December 17, 2014, on Defendant's Motion to Withdraw Guilty Plea and Defendant's Motion for Reconsideration of Sentence. At the hearing, Defendant's counsel argued that if they had known that Rebekah Gensiak pled guilty to a misdemeanor, they would have advised Defendant not to take the plea offer. N.T. 12/17/14 at p. 105. Defense counsel reasoned the co-defendant's plea agreement would have undermined her credibility as a witness during trial. N.T. 12/17/14 at p. 105.

(c) Applicable Law

When considering a petition to withdraw a guilty plea after sentencing, it is well-established that "a showing of prejudice on the order of manifest injustice"

9

is required before withdrawal is properly justified. Commonwealth v. Starr, 301 A.2d 592, 595 (Pa. 1973). "A defendant is presumed to be aware of what he was doing and the burden of proving involuntariness is squarely on him." Commonwealth v. Myers, 642 A.2d 1103, 1105 (Pa. Super. 1994) quoting Commonwealth v. West, 485 A.2d 490, 493(Pa. Super. 1984). The burden placed on a defendant in such a motion increases significantly after sentencing. Commonwealth v. English, 597 A.2d 122, 123 (Pa. Super. 1991). Post-sentencing attempts to withdraw a guilty plea must sustain this more substantial burden because of the recognition that a withdrawal of a guilty plea can be used as a sentence-testing device. Starr, 301 A.2d at 594. "A demonstration of manifest injustice requires a showing that the plea was involuntary or was entered without knowledge of the charge." Commonwealth v. Warren, 453 A.2d 5, 6 (Pa. Super. 1982).

In Commonwealth v. Kephart, 594 A.2d 358, 360 (Pa. Super 1991), the Pennsylvania Superior Court held that a court reviewing a post-sentence motion to withdraw a guilty plea must examine the totality of the circumstances and determine whether the plea was entered into involuntarily or without knowledge of the charge(s). In Kephart, the Defendant, who pled guilty to DUI, Driving at an Unsafe Speed and Homicide by Vehicle, sought to withdraw his guilty plea in light of newly discovered evidence that might have supported his averment that another individual was driving at the time of the accident. In Kephart, the Defendant asserted that a woman witnessed the car being driven by the decedent just prior to the accident and that the Commonwealth had this

10

evidence and did not turn it over to him. Kephart, 594 A.2d at 360. At the sentencing hearing, the witness stated she saw two males in the car and one of them was bearded. Id. However, the witness testified that she could not determine whether the bearded male was the driver or the passenger. Id. She further stated that she never told the police investigator the bearded male was driving. In addition, the police investigator testified that his notes from interviewing the witness contained no reference to any statement regarding the identity of the driver. Id. The Kephart Court ruled the witness' testimony does not amount to exculpatory evidence and second, the Commonwealth had no reason to believe that the witness's statement was exculpatory. Id. In conclusion, the Court found that "a manifest injustice does not result from the denial of appellant's motion to withdraw his guilty plea." Id.

### (d) Application

Under Kephart, this Court is required to examine the totality of the circumstances to determine if Defendant has met her burden of establishing manifest injustice. Like the Kephart Court, after reviewing the totality of the circumstances regarding Defendant's plea, this Court finds that her discovery that Rebekah Gensiak pled to a misdemeanor, rather than a felony, lends itself to a Kephart analysis. Defense counsel contends this discovery is tantamount to newly discovered evidence. Further they contend their strategy would have been to cross-examine the cooperating co-defendant about her plea agreement, suggesting the deal would have undermined her credibility as a witness. As in Kephart, this newly discovered "evidence" does not constitute the type of

11

exculpatory epiphany that sways this Court to find a manifest injustice. The newly discovered evidence that one of the co-defendants in this case pled to a misdemeanor and not a felony is not exculpatory evidence. The Defendant admitted that she committed the crimes for which she was sentenced. The Assistant District Attorney read the statement of facts for each crime into the record, and Defendant admitted to committing both crimes, stating with respect to both offenses "I should have done more." N.T. 5/18/14 at p. 22-23.

More importantly, the Defendant is not asserting her innocence. Rather, she is asserting that she would have proceeded to trial if she had known about her co-defendant's plea agreement. This scenario does not equate to the discovery of exculpatory evidence. Rather she asserts, if she went to trial, a jury would be less inclined to believe Rebekah Gensiak's testimony. This is pure speculation on her part. It is just as plausible that a jury would not have been swayed by the Defense's cross-examination. In either event, this type of attenuated speculation does not give rise to the stringent standard utilized by our courts to warrant a post-sentence guilty plea withdrawal.

There is no indication that this newly discovered information would have affected the outcome of the trial and therefore, Defendant's second matter raised on appeal is without merit.

12

## C. This Court Set Forth Sufficient Reasons for Defendant/Appellant's Sentence in the Aggravated Range

a. Defendant's Argument

Defendant asserts, on appeal, as follows:

> (c) The trial court erred in sentencing Appellant in the aggravated range in this case. The court failed to articulate sufficient and/or acceptable grounds for an aggravated range sentence on the record.

This Court sentenced Defendant to five (5) years to ten (10) years for Neglect of Care-Dependent Person under Title 18 Pa. C.S.A § 2713, graded as a felony one (1). This Court also sentenced Defendant to one (1) year to five (5) years for Endangering the Welfare of a Child under Title 18 Pa. C.S.A § 4304, graded as felony three (3). These sentences were run consecutively for an aggregate sentence of six (6) years to fifteen (15) years imprisonment.

b. Applicable Law

The Defendant is challenging the discretionary aspect of her sentence. In Pennsylvania, "such challenges must be raised in a post sentence motion or during the sentencing proceedings, or they are waived." Pa. R. Crim.P. 720 (B)(1)(a); see Commonwealth v. Watson, 835 A.2d 786, 791 (Pa. Super. 2003). "Sentencing is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." Commonwealth v. Tirado, 870 A.2d 362, 365 (Pa. Super. 2005). A sentencing court has not abused its discretion "unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." Commonwealth v. Wall, 926 A.2d 957, 961 (2007) quoting Commonwealth v.

13

Smith, 673 A.2d 893, 895 (1996). "When determining the appropriate punishment for any convicted defendant, the trial court must be guided by several principles: [t]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. §9721(b); See Commonwealth. v. Young, 895 A.2d 40, 42 (Pa. Super. 2006). In addition, "the trial court must consider the sentencing guidelines as well as the history and character of the defendant and the particular circumstances of the offense." Young, 895 A.2d at 44. "A sentence will not be disturbed where it is evident that the court was aware of the sentencing considerations and weighed the considerations in a meaningful fashion." Commonwealth v. Cappellini, 690 A.2d 1220, 1228 (1997). Moreover, where the court's sentencing colloquy "shows consideration of the defendant's circumstances, prior criminal record, personal characteristics and rehabilitative potential, and the record indicates that the court had the benefit of the presentence report, an adequate statement of the reasons for the sentence imposed has been given." Commonwealth v. Brown, 741 A.2d 726, 735 (Pa. Super. 1999) quoting Commonwealth v. Phillips, 601 A.2d 816, 823-24 (1992).

In order to sentence a Defendant in the aggravated range, Comm. v. Hoover, 492 A.2d 443, 444 (1985) sets forth the three criteria that are applicable. First, a sentencing judge may consider any legal factor in deciding whether a defendant should be sentenced within the aggravated range. Id. Second, the sentencing

14

judge's statement of reasons on record must reflect this consideration. Id. Finally, the sentencing judge's decision regarding the aggravation of a sentence will not be disturbed absent a manifest abuse of discretion. Id. citing Commonwealth v. Duffy, 491 A.2d 230, 233 (1985).

This Court set forth its reasons for sentencing Defendant in the aggravated range, as follows:

> [T]he reasons for the sentence being imposed today is that this sentence recognizes the serious nature of the offenses that have been committed by you, the fact that both of your victims suffered and they suffered for a prolonged period of time—unfortunately Mr. Robert Gensiak suffered a painful and prolonged condition of the Norwegian scabies—that both victims were unable either due to their age or their deteriorating condition or disability to care for themselves. We're talking about a two-year-old child and an adult male but with a deteriorating condition and a disability. Both of the victims were dependent upon you and other members of the family to provide the proper attention and medical care necessary to prevent any further suffering.
>
> The sentences that I'm imposing here today, ma'am, are consistent with the protection of the public and the rehabilitative needs of you, the defendant.
>
> Another reason for the sentence here today with respect to Robert is that by your own statements to the officers at the time of your arrest and your own statements in the presentence investigation is that you did take a more proactive role in the treatment and care of your brother Robert Gensiak, placing you in a better position to observe his deteriorating condition, to be alarmed by it, and to bring that attention to the appropriate authorities even if your mother wouldn't act.
>
> For all of those reason, ma'am, the sentence is imposed here today."
>
> (N.T. Joan Gensiak 2013 CR 2134 10/16/14 at p. 22-23.)

In sum, this Court considered that the Defendant's victims suffered for a prolonged period of time, that Robert Gensiak suffered a painful and prolonged

15

condition of the Norwegian scabies, that both victims were unable either due to their age or condition or disability to care for themselves and that both victims relied on Defendant for proper attention and medical care to prevent any further suffering. Further, this Court considered that Defendant took a more proactive role in the care of Robert Gensiak, placing Defendant in a better position to observe his deteriorating condition, to be alarmed by it, and to bring that attention to the appropriate authorities even if Defendant's mother wouldn't act. The Court set forth these reasons on the record during sentencing.

Further, this Court reviewed and took into consideration the presentence investigation report, heard from the Commonwealth, counsel for the Defendant and the Defendant herself. This Court also took into consideration Defendant's circumstances, personal characteristics, education level and rehabilitative potential. After careful consideration of all these factors, this Court imposed the above referenced sentence.

Based on this Court's consideration of the requisite factors, the sentencing guidelines and based on the reasons set forth on the record, Defendant's third matter raised on appeal is without merit.

### D. This Court Did Not Abuse its discretion in Sentencing Defendant/Appellant Disproportionately to her Co-Defendant, Rebekah Gensiak

a. Defendant's Argument

Defendant asserts, on appeal, as follows:

(d) The trial court abused its discretion in sentencing Appellant. Specifically, the court sentenced Appellant in a wildly

16

disproportionate manner to her co-defendant, Rebekah Gensiak who was similarly situated to her, without adequate reason for doing so.

The Defendant argues that because there is a disparity in sentencing between her and her cooperating co-defendant the Court should reconsider her sentence. As noted above, this Court sentenced Defendant to sixty (60) months to ten (10) years for Neglect of Care-Dependent Person under Title 18 Pa. C.S.A § 2713, graded as a felony one (1). This sentence is in the aggravated range. This Court also sentenced Defendant to twelve (12) to twenty-four (24) months for Endangering the Welfare of a Child under Title 18 Pa. C.S.A § 4304, graded as felony three (3). The respective sentences were run consecutively for an aggregate sentence of six (6) years to fifteen (15) years imprisonment. This Court sentenced Rebekah Gensiak to six (6) months to twenty-three (23) months imprisonment stemming from her guilty plea to one (1) count of Neglect of a Care-Dependent Person, graded as a misdemeanor of the first degree. This sentence was also in the aggravated range.

c.  Applicable Law

A trial court is not bound to impose a "like" sentence on all participants of a crime. Commonwealth. v. Landi, 421 A.2d 442, 444 (1980). "After considering the circumstances relating to each defendant, the trial court may impose different sentences." Commonwealth v. Burton, 301 A.2d 675, 677 (Pa. 1973). In order to impose different sentences on co-defendants, the court must articulate differences between the co-defendants that justify the disparate sentences. Commonwealth v. Thurmond, 390 A.2d 1330, 1330 (Pa. Super.

17

1978). The reason why one co-defendant receives a more severe sentence than another must be stated on the record. Commonwealth v. Sinwell, 457 A.2d 957, 960 (Pa. Super. 1983) citing Commonwealth v. McQuaid, 417 A.2d 1210, 1216 (Pa. Super 1980).

### d. Application

At the time of sentencing, this Court had reviewed and took into consideration the presentence investigation report, heard from the Commonwealth, counsel for the Defendant and the Defendant herself. This Court also took into consideration Defendant's circumstances, personal characteristics, education level and rehabilitative potential. After careful consideration of all these factors, this Court imposed the above referenced sentence. Notably, the Defendant has not demonstrated that the judgment exercised by this Court was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Instead, Defendant's sentence was the result of careful consideration of the reasons listed above. Further, as stated above, this Court articulated specific reasons for Defendant's sentence in the aggravated range.

Moreover, there are several reasons for the disparity in sentences between Defendant, Joan Gensiak, and her co-defendant, Rebekah Gensiak. These reasons were articulated on the record. First and foremost, the defendants pled guilty to different classifications of charges. Namely, Defendant Joan Gensiak pled guilty to Neglect of Care-Dependent Person in violation of Title 18 Pa. C.S.A § 2713, graded as a felony one (1) and Endangering Welfare of Children

18

in violation of Title 18 Pa. C.S.A § 4304, graded as a felony three (3). Defendant Rebekah Genisak pled guilty to one (1) count of Neglect of a Care-Dependent person in violation Title 18 Pa. Cons. Stat. Ann. § 2713 , graded as a misdemeanor of the first degree. These different classifications obviously carry different sentencing guidelines.

Second, all three (3) co-defendants received a sentence in the aggravated range.

Third, this Court articulated the reasons for the sentences of Defendant and Rebekah Gensiak on the record. In setting forth the reasons for Defendant Joan Gensiak's sentence, this Court stated as follows, and as stated above :

> [T]he reasons for the sentence being imposed today is that this sentence recognizes the serious nature of the offenses that have been committed by you, the fact that both of your victims suffered and they suffered for a prolonged period of time—unfortunately Mr. Robert Gensiak suffered a painful and prolonged condition of the Norwegian scabies—that both victims were unable either due to their age or their deteriorating condition or disability to care for themselves. We're talking about a two-year-old child and an adult male but with a deteriorating condition and a disability. Both of the victims were dependent upon you and other members of the family to provide the proper attention and medical care necessary to prevent any further suffering.
>
> The sentences that I'm imposing here today, ma'am, are consistent with the protection of the public and the rehabilitative needs of you, the defendant.
>
> Another reason for the sentence here today with respect to Robert is that by your own statements to the officers at the time of your arrest and your own statements in the presentence investigation is that you did take a more proactive role in the treatment and care of your brother Robert Gensiak, placing you in a better position to observe his deteriorating condition, to be alarmed by it, and to bring that attention to the appropriate authorities even if your mother wouldn't act.

19

For all of those reason, ma'am, the sentence is imposed here today."

(N.T. Joan Gensiak 2013 CR 2134 10/16/14 at p. 22-23.)

In setting forth the reasons for Rebekah Gensiak's Sentence, the Court stated as follows:

The reasons for my sentence here today are that the sentence is consistent with the protection of the public and the rehabilitative needs of you, the defendant..... that the victim due to his deteriorating condition and his own disability was unable to care for himself and was dependent upon his family members to provide care for him, the fact that your brother suffered a painful and prolonged death. This sentence also recognizes the serious nature of the offense."

(N.T. Rebekah Gensiak, 2013 CR 2143, 10/16/14 at p. 16)

It is clear from the reasons set forth on the record that Defendant Joan Gensiak was the more culpable of these defendants. Defendant Joan Gensiak pled to two (2) felonies, each of which concerned a separate victim. Further, while both sisters lived in the house with Robert Gensiak, Joan had more of an opportunity to see the pain and suffering Robert suffered before his death. In placing the reasons for the sentences on the record, this Court noted Joan's more proactive role in her brother's care which, as stated by this Court, placed her in a better position to observe his deteriorating condition. Joan also placed her daughter in immediate danger and caused her daughter to suffer. Defendant Rebekah Gensiak, while culpable in the death of Robert Gensiak, was not as culpable in the eyes of the Court because she was out of the house more often due to school and work. Additionally, she was on bed rest due to her pregnancy.

20

N.T. 12/17/14 at p. 80. Further, Rebekah Gensiak did not participate in hands on care with Robert. N.T. 12/17/14 at p. 80. Finally, Rebekah Gensiak only pled to a misdemeanor in exchange with her cooperation as a witness for the prosecution.

Based on the reasons set forth in the record for the differences in sentence between Rebekah Gensiak and the Defendant, as well as this Court's consideration of the requisite factors, Defendant's fourth matter raised on appeal is without merit.

## IV.    CONCLUSION

For the reasons set forth in this Opinion, Defendant/Appellant's matters raised on appeal are without merit.

BY THE COURT:

_____ J.

DATE:

6-1-15

21