**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ACKEEM MORRIS | : | |
| | : | |
| Appellant | : | No. 498 EDA 2022 |

Appeal from the Judgment of Sentence Entered April 16, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0011393-2016

BEFORE:  OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 1, 2023**

Ackeem Morris (Appellant) appeals from the judgment of sentence imposed after a jury found him guilty of attempted murder, aggravated assault, criminal conspiracy to commit attempted murder, conspiracy to commit aggravated assault, firearms not to be carried without a license, carrying a firearm without a license on the public streets of Philadelphia, possession of an instrument of a crime, simple assault, and recklessly endangering another person.[1]  We affirm in part and vacate in part.

The trial court summarized the factual history underlying this appeal as follows:

---

[1] **See** 18 Pa.C.S.A. §§ 901(a) and 2502, 2702(a)(1), 903(a), 6106(a)(1), 6108, 907(a), 2701(a)(1), 2705.  Immediately after the jury's verdicts, Appellant pled guilty to persons not to possess firearms.  **Id.** § 6105(a)(1).

This case stems from Appellant's shooting of Brandon Davis ("Mr. Davis" [or "the victim"]) on September 17, 2016. Mr. Davis's multiple gunshot[] wounds were nearly fatal and included a lacerated liver and kidney, kidney failure, a collapsed lung, respiratory failure, sepsis, internal bleeding, acute post-hemorrhagic anemia, and bone fractures. On that date, officers investigating a shooting were advised that the victim had been transported to Temple University Hospital in a private vehicle. Mr. Davis was uncooperative and refused to give an interview about the shooting.

Detectives obtained video footage from the scene of the shooting which [occurred] outside a corner store. The videos show Mr. Davis, a male later [] identified as Talil Williams [(Mr. Williams)], and Appellant, who [wa]s wearing "a black Khimar [(, *i.e.*, a traditional Muslim outerwear garment)], sunglasses, yellow socks with blue stripes on them, black sneakers ... [and] carrying a tan or goldish satchel or purse over his shoulder."

The videos show that Appellant enters a store, exits and shoots Mr. Davis multiple times from a proximity of about five feet. After the shooting, Appellant flees northbound on Carlisle Street from York Street. Appellant's directions of travel led the detectives to a nearby apartment complex at 2411 North 11th Street, where they obtained additional videos from the building's surveillance cameras. These videos show a man wearing the same Muslim garments, distinctive socks and satchel as the shooter, along with Mr. Williams, enter and exit the building together just before the shooting. Within minutes after the shooting, the two men are again on videotape entering the elevator together, and although Appellant had removed his traditional Muslim garments that covered his face and body, he still wore black sneakers and [the] same distinctive "yellowish socks with blue markings on them." The video shows Appellant re-enacting to Mr. Williams how he shot Mr. Davis.

After extensive investigation, Detectives located Mr. Williams, who gave a statement identifying Appellant as the other person wearing Muslim garb involved in the shooting.

Detectives recovered the satchel the shooter was carrying at the scene, along with the distinctive socks and black shorts. DNA samples extracted from the black shorts matched the DNA obtained from Appellant. Gunshot residue was found in the

purse/satchel recovered from the apartment.

Trial Court Opinion, 6/1/22, at 3-4 (citations to record omitted; some capitalization modified).

The trial court also detailed the procedural history:

On December 18, 2017, this court sentenced Appellant to consecutive terms of ten (10) to twenty (20) years' incarceration for his convictions of attempted murder and conspiracy [to commit attempted murder]. This court imposed no further sentences for Appellant's remaining convictions.

On December 18, 2017, Appellant filed post-sentence motions, which this court denied on that same day. On January 10, 2018, Appellant filed a notice of appeal to the Superior Court (255 EDA 2018), and on April 9, 2019, Appellant filed a "Statement of Errors Complained of on Appeal" consisting of forty-eight (48) numbered paragraphs. On June 22, 2020, the Superior Court affirmed the convictions[;] however[,] the court vacated the sentence imposed and remanded for re-sentencing to correct an error made by the trial court whereby it sentenced Appellant for committing two (2) inchoate crimes in error. [*See generally Commonwealth v. Morris*, 237 A.3d 1072 (Pa. Super. 2020) (unpublished memorandum).]

On April 16, 2021, the trial court conducted a re-sentencing hearing and while changing the structure of the sentence, [the court] nonetheless again sentenced Appellant for two (2) inchoate crimes,[2] in error[, which we explain further below. Appellant's c]ounsel thereafter filed an untimely post-sentence motion to correct the sentence; said motion was denied. However, the trial court appointed new counsel to represent Appellant and he filed a notice of appeal to the Superior Court on May 26, 2021 (1141 EDA

---

[2] With respect to attempted murder, the court resentenced Appellant to 15 – 30 years in prison. The court imposed a **concurrent** sentence of 10 – 20 years for conspiracy to commit attempted murder. Finally, for persons not to possess firearms, the court imposed a sentence of 5 – 10 years in prison, to run consecutive to the sentence for attempted murder. Thus, **Appellant received an aggregate sentence of 20 – 40 years in prison (*i.e.*, the same aggregate sentence he received in 2017).**

- 3 -

2021), despite the fact that the late post-sentence motion would render the appeal untimely.

Therefore, [Appellant's] counsel filed a *praecipe* to discontinue the untimely appeal (1141 EDA 2021) and filed a timely [] petition on September 1, 2020[, pursuant to the Post Conviction Relief Act (PCRA). **See** 42 Pa.C.S.A. §§ 9541-9546]. … [Appellant thereafter withdrew his PCRA petition,] and the trial court granted reinstatement of Appellant's right to file his post-sentence motion and a direct appeal, *nunc pro tunc*.

Trial Court Opinion, 6/1/22, at 1-2 (footnote added; some capitalization modified).

On January 25, 2022, Appellant filed a *nunc pro tunc* post-sentence motion, seeking, *inter alia*, reduction of the purportedly excessive sentence imposed at resentencing. Appellant claimed the trial court abused its discretion in "increasing" the sentence originally imposed for Appellant's conviction of attempted murder. **See** Post-Sentence Motion, 1/25/22, at ¶¶ 13-14 ("At the [April 16,] 2021 [re]sentencing hearing, the court incorporated its reasoning and bases from the [December 18,] 2017 sentencing hearing. Despite incorporating the same bases from 2017, the court raised [Appellant's] sentence on the charge of attempted murder by 50% despite the absence of any new facts warranting an increased sentence."). The trial court denied Appellant's post-sentence motion on January 28, 2022. This timely appeal followed. The trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant presents two issues for review:

> 1. Is the sentence imposed illegal where [A]ppellant was convicted of — and sentenced on — both conspiracy to commit attempted murder, and attempted murder in violation of 18 Pa.C.S.A. § 906?
>
> 2. Is the sentence imposed unduly harsh and excessive under the circumstances of this case?

Appellant's Brief at 5 (issues reordered).

Appellant first claims the trial court imposed an illegal sentence because he "was convicted of – and sentenced on – both conspiracy to commit attempted murder, and attempted murder …." *Id.* at 21. We agree.

"The determination as to whether a trial court imposed an illegal sentence is a question of law; an appellate court's standard of review in cases dealing with questions of law is plenary." *Commonwealth v. White*, 268 A.3d 499, 500 (Pa. Super. 2022) (citation omitted). Our scope of review is *de novo*. *Commonwealth v. Summers*, 245 A.3d 686, 697 (Pa. Super. 2021).

The Commonwealth agrees that Appellant's illegal "sentence for conspiracy should be vacated[.]" Commonwealth Brief at 7 (bold omitted). The Commonwealth points out this Court's holding, in Appellant's direct appeal, that the original sentencing court improperly "imposed a sentence on both of [Appellant's] attempted murder and conspiracy to commit murder

convictions — two inchoate crimes." *Morris*, 237 A.3d 1072 (unpublished memorandum at 11);[3] *see also* Commonwealth Brief at 7 (same).

The trial court concedes it illegally sentenced Appellant with respect to his conspiracy conviction:

> The trial court held a re-sentencing hearing on Aril 16, 2021, as per direction of the Superior Court (*Commonwealth v. Morris*, 255 EDA 2018 Opinion filed June 22, 2020) to correct a previous error in sentencing, whereby the trial court imposed a sentence on two inchoate crimes in violation of *Commonwealth v. Maguire*, 452 A.2d 1047 (Pa. Super. 1982). In so doing, the trial court again erred in the imposition of sentence by failing to recognize that a sentence on the 2[nd] inchoate crime would still be illegal even if it ran concurrently, and not consecutively. **While [Appellant's] aggregate sentence of 20-40 years did not change, the structure of the sentence was illegal**. Therefore, this court recommends the sentence for conspiracy to commit attempted murder be vacated, and the remaining sentence be affirmed. It was for this reason that the PCRA petition was withdrawn, and Appellant's appellate rights were reinstated *nunc pro tunc*.

Trial Court Opinion, 6/1/22, at 6 (emphasis added; citations altered). We agree. Because the sentence imposed for Appellant's conviction of conspiracy to commit attempted murder is unlawful, we vacate that sentence.

We next address Appellant's second issue, in which he challenges the discretionary aspects of his sentence imposed at resentencing. Appellant

---

[3] The panel in *Morris* cited as support *Commonwealth v. Maguire*, 452 A.2d 1047, 1050 (Pa. Super. 1982) (recognizing a trial court may not sentence a defendant on two inchoate crime convictions), and 18 Pa.C.S.A. § 906 ("A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime."). *Morris*, 237 A.3d 1072 (unpublished memorandum at 10-11).

emphasizes that when the trial court originally sentenced him in 2017, it imposed on the attempted murder conviction a sentence of 10 – 20 years in prison, whereas at resentencing, the court sentenced Appellant to 15 – 30 years for attempted murder. *See* Appellant's Brief at 26-27, 28. According to Appellant:

> The imposition of the significantly increased sentence on the attempted murder charge with no accompanying explanation of what warranted the 50 percent increase is excessive under the circumstances. The fact that the only new facts and information adduced at the re-sentencing hearing warranted a *mitigation* in the sentence, rather than an increase, results in imposition of a sentence on this charge which violates the "fundamental norms which underlie the sentencing process." The [resentencing court also failed] to adequately account for the additional mitigating factors presented at the re-sentencing hearing….

*Id.* at 30 (italics in original; break omitted); *see also id.* at 29 (detailing mitigating factors, including Appellant's difficult childhood and purported mental health conditions).

There is no absolute right to appeal the discretionary aspects of a sentence. *Summers*, 245 A.3d at 691. Rather, where, as here, the appellant preserved his sentencing challenge in a timely post-sentence motion, he must (1) include in the appellate brief a Pa.R.A.P. 2119(f) concise statement of the reasons relied upon for allowance of appeal of; and (2) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *Summers*, 245 A.3d at 691.

Instantly, Appellant's brief includes a Rule 2119(f) statement, and his claims present a substantial question. *See Commonwealth v. Knox*, 165

- 7 -

A.3d 925, 929-30 (Pa. Super. 2017) ("A claim that the trial court focused exclusively on the seriousness of the crime while ignoring other, mitigating circumstances, such as [the defendant's] mental health history and difficult childhood, raises a substantial question."); *Commonwealth v. Barnes*, 167 A.3d 110, 123 (Pa. Super. 2017) (*en banc*) (a claim of judicial vindictiveness in resentencing following a remand presents a substantial question); *see also* Appellant's Brief at 23. Accordingly, we review the merits of Appellant's claim.

We are mindful of our standard of review: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Barnes*, 167 A.3d at 122 n.9 (citation omitted).

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted).

> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

The Sentencing Code directs a trial court to follow the general principle that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "A sentencing court has broad discretion in choosing the range of permissible confinements that best suits a particular defendant and the circumstances surrounding his crime." *Commonwealth v. Celestin*, 825 A.2d 670, 676 (Pa. Super. 2003) (citation omitted). The court "need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Commonwealth v. Schutzues*, 54 A.3d 86, 99 (Pa. Super. 2012) (citation omitted).

The trial court must also consider the sentencing guidelines. *See Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008). Here, it is undisputed that the sentences imposed for each charge fall within the standard range of the sentencing guidelines. *See* Appellant's Brief at 32 n.19; Commonwealth Brief at 6. Therefore, we may only vacate Appellant's sentence if "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2); *see also Commonwealth v. Raven*, 97 A.3d 1244, 1254 (Pa. Super. 2014).

The trial court opined it did not abuse its sentencing discretion, and reasoned:

> [T]o the extent that Appellant argues that the increase in his sentence for attempted murder to 15-30 years is excessive and an abuse of this court's discretion, Appellant's argument has no merit. **The aggregate sentence remains the same**: 15-30 years for attempted murder and [a consecutive sentence of] 5-10 years for [persons not to possess firearms].
>
> * * *
>
> Appellant complains that when he was re-sentenced, the court failed to consider numerous factors, including Appellant's difficult childhood, mental health diagnosis, and various ways in which he has changed during his period of incarceration. As noted by this court, however, the lengthy discussion of the factors weighed by the court at Appellant's prior sentencing hearing was referenced and made a part of the re-sentencing hearing. The court was extremely detailed when weighing the factors at [Appellant's] first sentencing. In that regard, the court recognized Appellant's difficult circumstances:
>
>> THE COURT: Having reviewed the presentence [report (PSI)] information that I have regarding [Appellant], and all his family has already told the [c]ourt, certainly [Appellant] had a very, very difficult childhood with his mother being incarcerated and his father, who was very forth[right] with the Court in coming here today, also spending time in and out of jail. [Appellant] did not have his parents to rely upon, but he did have his grandmother, Ms. Harris, who raised him and obviously still care[s] about him. She worked to support him. Because of her efforts, there was a somewhat stable household for [Appellant] to grow up in and his needs were met by his grandmother …[.] Unfortunately, [Appellant] started having behavior issues very, very early in grade school and has a juvenile history that reflects that…. There are … six commitments, I believe as a juvenile []. Over and over and over[, Appellant] being discharged from placement, being put back into placement. … Unfortunately, this went on all throughout school. Nothing [Appellant did] as a juvenile indicat[es]

- 10 -

violent behavior, but certainly [Appellant's] juvenile [history] … mak[es] it clear [Appellant] was not particularly amendable towards the guidance that was being offered to him through the [c]ourt and through all of his placements.

(N.T., 12/8/17, pgs 16, 17).

The court went on to note [that at Appellant's original sentencing,] Appellant received his high school diploma but that he had yet to obtain a legitimate source of employment. In that regard, Appellant admitted to supporting his own children by selling drugs on Lehigh Avenue[,] where he was earning good money. At age 17[,] Appellant was adjudicated for statutory sexual assault and he was committed as a juvenile until he turned 18 years old. Then, he amassed 6 arrests, 3 convictions, 3 commitments, 2 violation of probations, [and] 2 sentence revocations. All of that occurred between the ages of 18-21, when [Appellant] was arrested for shooting the [victim] in this case.

Thus, the record confirms that prior to imposing its sentence, this court closely considered Appellant's [PSI], his lengthy criminal history in the City of Philadelphia, his repeated failure to rehabilitate, his abhorrent conduct in this case, his history of substance abuse and mental health issues, his education, his lack of employment history, and his family and personal circumstances. (N.T., 12/8/17, at pgs. 16-24).

Regarding Appellant's depraved shooting of Mr. Davis, this court [stated at the original sentencing hearing]:

So[, Appellant's counsel] has argued mitigation for you based on your childhood and upbringing and did so very well, but I will note that having sat through the trial and watched [the surveillance] video over and over again, … I have to agree with the prosecution that it shows somebody who was intent on the execution of Mr. Davis….

Put together, what it all shows is someone who disguised themselves [*sic*] from head, almost to toe, in Muslim garb, walk[ed] down to that co[r]ner store, go in, go out, draw your gun, and almost in point-blank range, try to kill [Mr.] Davis and you nearly succeeded. It's only

- 11 -

for the grace of God that Mr. Davis is alive and that you did not face a homicide trial and a homicide conviction.

In my mind ... what [Appellant] did shows the same type of culpability, the same type of intent to kill, the same cold-blooded premeditated plan to shoot and kill Mr. Davis. … [A]dding to the disturbing nature of what we saw [on the video] was [Appellant] acti[ng] out in the elevator [immediately after the shooting]. Clearly[, Appellant was] not in the least bit disturbed by what [he] had just done, showing almost an animated reenactment to Mr. Williams….

I have to say … that there are [] few times that I have had on this bench for now 13 years that I've seen such intentionally, brutal behavior.

(*Id.* at pgs. 20-21).

Before shooting Mr. Davis, Appellant had already amassed a considerable criminal record that included twelve arrests, several adjudications or convictions, and multiple probation violations. Notwithstanding the many opportunities provided to him, Appellant made no effort toward rehabilitation. (*Id.* at pgs. 16-20).

Returning to [Appellant's] re-sentencing hearing, the court clearly stated that all of the aforesaid information would not be reiterated but would be incorporated into the record.

THE COURT: All right. I will say, of course, that I remember the details of this case very, very clearly. And I believe I stated on the record at sentencing all of the reasons and all of the considerations that I have weighed in issuing the sentence that I did. I'm not going to go into a full recitation of those reasons again since they are already of record. I will just incorporate that record into today's record. However, suffice it to say, that this was a cold[-]blooded attempt … to commit murder. And I did find that [Appellant's] actions [after the shooting] seemed to indicate that he was somewhat cavalier about his intent immediately afterwards as we saw on the video that was taken when [Appellant] was in the elevator of the building as well as in the courtroom.

- 12 -

(N.T., 4/16/21, pgs 7, 8.)

Counsel for Appellant argued [at resentencing] that the sentence should be lowered to a total 10-20 years because Appellant is still young and that a lesser sentence would enable him to participate in rehabilitation programs in state custody. Appellant exercised his right to allocution and detailed the ways in which he believes he has tried to better himself while incarcerated. Notably, however, Appellant did not express any remorse for his actions in connection with the [victim], nor did he express any concern for the [victim] and his family. The court was not compelled to comment nor question Appellant's assertions in this regard.

* * *

**Considering Appellant's vicious and remorseless conduct in this case, together with his overall penchant for crime and disregard of its effect on his community, this court's aggregate sentence of 20 to 40 years' incarceration is thoroughly justified**.

Trial Court Opinion, 6/1/22, at 6-7, 8-11 (emphasis added; some capitalization, citations and punctuation modified).

Our review discloses record and legal support for the court's reasoning.

This Court rejected a similar claim in ***Barnes***, ***supra***:

We have held that preserving the integrity of a prior sentencing scheme is a legitimate sentencing concern. ***See*** [***Commonwealth v.***] ***Walker***, 568 A.2d [201,] 205 [(Pa. Super. 1989)] ("Upon resentencing, a court has a valid interest in preserving the integrity of a prior sentencing scheme.") (citation omitted). Indeed, a trial court properly may resentence a defendant to the **same aggregate sentence** to preserve its original sentencing scheme. ***See Commonwealth v. Bartrug***, 732 A.2d 1287[, 1289] (Pa. Super. 1999) (noting a resentence of 7½ to 15 years for burglary was lawful after not receiving a sentence for burglary and having been given previously the same sentence for theft by unlawful taking)…. "[I]n most circumstances, a judge can duplicate the effect of the original

- 13 -

sentencing plan by adjusting the sentences on various counts so that the aggregate punishment remains the same." **Walker**, 568 A.2d at 206. However, "[i]f a judge could have imposed the same aggregate sentence he handed down at the original sentencing hearing, and … instead imposes a harsher aggregate sentence, the presumption of vindictiveness could not be rebutted by invoking the need to preserve the original sentencing plan." **Id.** In **Commonwealth v. McHale**, 924 A.2d 664, 667 (Pa. Super. 2007), **overruled in part on other grounds** as stated in **Commonwealth v. Robinson**, 931 A.2d 15 (Pa. Super. 2007), we upheld the trial court's resentencing of the defendant when his conviction on the most serious charges, two counts of aggravated assault, previously had been reversed based on insufficient evidence. **McHale**, 924 A.2d at 673-74. After remand, to maintain the same total aggregate sentence as originally imposed, the trial court increased the overall sentence on the surviving counts. **Id.** at 667. Noting that the aggregate sentence remained unchanged, we upheld the new sentence. **Id.** at 674. In so doing, we noted:

> [O]ur conclusion is not altered by the fact that remand and resentencing were prompted by reversal of two of [the defendant's] convictions…. Whether remand is the result of reversal of one or more convictions or vacation of an illegal sentence, we conclude that the trial court has the same discretion and responsibilities in resentencing.

**Id.** at 673-74.

… [C]onsistent with [] **Walker**, and **McHale**, the trial court's resentencing [appellant] did not rise to vindictiveness because the trial court here sought to preserve the integrity of the original sentencing scheme by imposing the same aggregate sentence.

**Barnes**, 167 A.3d at 124-25 (emphasis in original; some citations modified).

Finally, where, as here, a sentencing court had the benefit of a PSI, "it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Conklin**, 275 A.3d

- 14 -

1087, 1098 (Pa. Super. 2022) (citation omitted). "[W]here the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009); ***see also Commonwealth v. Fowler***, 893 A.2d 758, 767 (Pa. Super. 2006) ("The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors." (citation omitted)).

In sum, we discern no abuse of the resentencing court's discretion. Contrary to Appellant's claim, his standard-guideline-range sentences were neither excessive nor unreasonable. ***See Commonwealth v. Walls***, 926 A.2d 957, 964 (Pa. 2007) (stating that "rejection of a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently, whether the sentence is above or below the guideline ranges."); ***Moury***, 992 A.2d at 171 (stating "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.").

Based on the foregoing, we vacate Appellant's unlawful sentence imposed for conspiracy to commit murder. Because the trial court ordered the conspiracy sentence to run **concurrent** to the sentence imposed for attempted murder, our disposition does not affect the overall sentencing scheme. ***See Commonwealth v. Henderson***, 938 A.2d 1063, 1067 (Pa.

Super. 2007) (stating that "since appellant's sentences were concurrent, the trial court's overall sentencing scheme has not been compromised, and it [wa]s not necessary to remand for re-sentencing" after this Court held the sentence imposed on one count to be unlawful); *cf. Commonwealth v. Tanner*, 61 A.3d 1043, 1048 (Pa. Super. 2013) (holding vacatur of a consecutive sentence in the context of a larger sentencing scheme necessitates vacatur of the entire sentence). We affirm Appellant's judgment of sentence in all other respects.

Judgment of sentence vacated in part and affirmed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/01/2023